Ronald O. Kaye, SBN 145051
E-mail: rok@kmbllaw.com
Barrett S. Litt, SBN 45527
David S. Mclane, SBN 124952
KEVIN LaHue, SBN 237556
KAYE, McLANE, BEDNARSKI & LITT, LLP
234 East Colorado Boulevard, Suite 230
Pasadena California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

James S. Muller, SBN 126071
E-mail: jamesmullerlaw@att.net
LAW OFFICES OF JAMES S. MULLER
225 East Broadway, Suite 107F
Glendale, California 91205
Telephone: (818) 536-7922
Fax: (818) 536-7499

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERIBERTO RODRIGUEZ, et al., | Case No. CV 10-6342 CBM (AJWx) |
| Plaintiffs, | **DECLARATION OF BARRETT S. LITT IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES** |
| vs. | |
| COUNTY OF LOS ANGELES, et al. | Date:       June 16, 2014<br>Time:       TBD<br>Ctrm:      2 (Spring St.) |
| Defendants. | |

## DECLARATION OF BARRETT S. LITT

I, Barrett S. Litt, declare as follows:

1.        This declaration is submitted in support of Plaintiffs' Motion for Fees and Costs. The facts set forth herein are within my personal knowledge or knowledge gained from review of the pertinent documents. If called upon, I could and would testify competently thereto.

## BACKGROUND AND CIVIL RIGHTS/ATTORNEY FEE EXPERTISE

2.        I am an attorney duly licensed to practice in the State of California. Since 1984, I have been the principal or senior partner in firms that operate for the specific purpose of developing and maintaining a civil rights and public interest law practice that operates in the private sector on the basis of self-generated fee awards and other recoveries. Since January 1, 2013, I have been a partner in the law firm of Kaye, McLane, Bednarski & Litt (referred to at times as "KMBL").[1] Between September 2010 and December 31, 2012, I was a partner in the law firm of Litt, Estuar, and Kitson, which still operates to some extent as an independent firm to complete certain old cases. From July 2004 to September 2010, I was a partner in the law firm of Litt, Estuar, Harrison, and Kitson. From 1998 to July 2004, I was the principal in the law firm of Litt & Associates, Inc. From September 1, 1991 to May 1, 1997, when my then partner left the law firm to become Deputy General Counsel for Civil Rights at the federal Department of Housing and Urban Development, I was a partner at the firm of Litt & Marquez. For the seven years prior to that, I was a partner in the firm of Litt & Stormer, Inc.

3.        I graduated from the University of California at Berkeley in 1966 and from UCLA School of Law in 1969. For the first approximately ten years of

---

[1] Because this case was handled by Kaye, McLane & Bednarski before I became a partner with the firm, where it is relevant to refer to work at that stage, the designation "KMB" is used.

1

my practice, I focused primarily in the area of criminal defense at the trial and appellate levels, mostly in federal courts. In that capacity, I handled hundreds of matters, tried many cases ranging from immigration offenses to murders, and handled numerous appeals. Since 1981, I have focused primarily on complex civil litigation in the areas of constitutional law, civil rights law, class action litigation, and complex multi-party litigation.

4.      My former firm, Litt & Stormer, received the Pro Bono Firm of the Year Award from Public Counsel in 1987 in recognition of its public interest and civil rights work. Litt & Marquez received an award from the NAACP Legal Defense Fund in July, 1992, as civil rights firm of the year in recognition of its civil rights work. I received an award from UCLA School of Law as its public interest alumnus of the year in 1995 and received a CLAY award for my work in *Goldstein v. City of Long Beach et al.*, along with my co-counsel in the case, described in ¶12 *infra*.

5.      I have both spoken and written on the subject of civil rights training. I published an article entitled "Class Certification in Police/Law Enforcement Cases" in Civil Rights Litigation and Attorney's Fee Annual Handbook, Vol. 18, Ch. 3 (West Publishing 2002) and one for the National Police Accountability Project titled "Select Substantive Issues Regarding Class Action Litigation In The Jail/Prison Setting", National Police Accountability Project, October 2006. I published an article in the Los Angeles Lawyer regarding the use of minimum statutory damages under the Unruh Act, particularly actions brought under Civil Code §52.1, to enhance the prospects for certifying class actions. See "Rights for Wrongs," Los Angeles Lawyer December 2005. In 2010, I published an article in West's Civil Rights Litigation and Attorney's Fee Annual Handbook entitled, "Obtaining Class Attorney's Fees." I am rated "AV" by Martindale-Hubbell. I am, and have been for many years, listed in Super Lawyers Southern California in the fields of civil rights and class actions.

6.      My curriculum vitae is attached as Exhibit "A" to this declaration.

7.      I am considered an expert in, among other things, attorneys' fees in civil rights and class action cases. I have frequently trained attorneys regarding obtaining and properly documenting statutory attorneys' fee awards. I have filed declarations on numerous occasions expressing expert opinions on the appropriate standards for awards of attorneys' fees in civil rights cases, which have been accepted by the courts.

8.      In the State Bar proceeding *In re Yagman*, I was qualified as an expert in attorneys' fees under 42 U.S.C. §1988 and testified in person on whether or not Mr. Yagman's fee arrangement in a police shooting case was or was not unconscionable, as the State Bar contended in that case. I also recently testified in a State Bar proceeding as an expert on civil rights practice in the context of police and jail litigation.

9.      In 2007, I testified as an attorneys' fee expert in a civil rights case on behalf of plaintiffs represented by a major law firm in Los Angeles. The case had a confidential settlement, with fees to be arbitrated by a former superior court judge now at JAMS. Because the settlement and arbitration were confidential, I do not feel at liberty to identify the issues, parties, firms or retired judge involved. However, there was a defense fee expert in that case who described me as "a prominent Los Angeles civil rights litigator experienced in fee issues arising from public interest litigation." The arbitrator described my testimony as "credible and reliable", and described me as having "had a wide exposure to fees at a number of major firms in Los Angeles doing complex civil litigation."

10.      I have also on occasion represented other attorneys in their fee litigation seeking statutory attorneys' fees.

11.      I litigate a wide range of civil rights cases, including police and jail abuse, wrongful conviction, housing and employment and other discrimination, and violation of a wide range of constitutional rights. My current emphases are

civil rights class actions and wrongful convictions cases. I am currently lead or co-lead counsel in pending civil rights class actions in the Los Angeles area and in other jurisdictions, including Washington D.C., Maryland and Georgia.

12.    As I mentioned, my full curriculum vitae is attached. To give some sense of my experience, I mention here the largest civil rights cases in which I have been the lead counsel:

> *Williams v. Block*, Case No. CV97-03826 CW (C.D. Cal.) and related cases (a series of cases county jail overdetention and strip search cases, settled for $27 Million and a complete revamp of jail procedure;

> *McClure v. City of Long Beach* (fair housing case against City of Long Beach for preventing six group homes for the handicapped from opening; jury verdict before remittitur of $22.5 Million (exclusive of attorney's fees) rendered 8/04/04; case recently settled for $20 Million);

> *Craft v. County of San Bernardino*, EDCV05-0359 SGL (C.D. Calif.) (reported at 2008 U.S.Dist. LEXIS 27526) (certified class action against the Sheriff of San Bernardino County for blanket strip searches of detainees, arrestees, and persons ordered released from custody; partial summary judgment decided for plaintiffs; $25.5 Million settlement plus injunctive relief in 2008);

> *MIWON v. City of Los Angeles*, Case No.: CV07-3072 AHM (FMMx) (class action on behalf of demonstrators attacked by LAPD in MacArthur Park on May 1, 2007; settled in 2009 for $12.75 Million plus injunctive relief);

> *Bynum v. District of Columbia*, Case No. 02-956 (RCL) (D.D.C.) (certified class action against the District of Columbia for

4

overdetentions and strip searches of persons ordered released from custody, settled for $12 Million in 2006);

➢ *Gamino v. County of Ventura*, Case No. CV02-9785 CBM (Ex) (C.D. Cal.) (settlement for putative class fund of approximately $12 Million for persons arrested on possession of drugs and strip searched);

➢ *Goldstein v. City of Long Beach*, et al., Case No. CV04-9692 AHM (Ex) (C.D. Cal.) (wrongful conviction case against Long Beach Police Department based on violation of *Brady v. Maryland* for man imprisoned for 24 years; $7.95 Million settlement in August 2010);

➢ *Lopez v. Youngblood*, 609 F.Supp.2d 1125 ((E.D. Cal. 2009) (Settlement approved for putative class fund of approximately $7 Million for inmates strip searched after becoming entitled to release, and strip searches in groups);

➢ *Barnes v. District of Columbia*, Case 1:06-cv-00315-RCL 02-956 (RCL) (D.D.C.) (*Bynum* follow-up certified class action against the District of Columbia for overdetentions and strip searches of persons ordered released from custody, settled for $12 Million in 2006).

13.    My qualifications have been noted by various courts or opposing experts. Following are a few examples:

a.    Kenneth Moscaret, a well known defense fee auditor, recently stated in a declaration where he addressed my qualifications that I had "an outstanding background and reputation in civil rights/constitutional litigation in Los Angeles", that I was "one of the top litigators in [my] field" and that he believed that my "skill, experience, and reputation in his field are deserving of a premium rate" (although he thought a premium rate was lower than I do).

5

b.      Magistrate Judge Carla Woehrle, in awarding attorneys' fees in *Williams v. Block*, *supra*, commented that I am "considered one of the outstanding civil rights litigators in California, with special expertise in class actions, [and] the other attorneys involved in this litigation on behalf of the class are highly regarded, experienced and capable civil rights attorneys…."

c.      United States District Judge Stephen Larson, in awarding attorneys' fees in *Craft v. County of San Bernardino*, *supra*, commented that "Plaintiffs' counsel are experienced civil rights litigators who are at the top of their field of expertise – civil rights litigation with special expertise in civil rights class actions."

d.      This Court, in awarding attorneys' fees in *Gamino v. County of Ventura*, Case No. CV02-9785 CBM (Ex), stated, "Mr. Litt is widely known as one of the foremost civil rights attorneys in California, having a particular expertise in civil rights class actions and other complex multi-party civil rights cases, especially law enforcement class actions."

e.      In a recent case in state Court, where I submitted a declaration in support of a fee motion, Judge Gregory W. Alarcon described another attorney and me as "acknowledged experts in attorney fees in class action cases . . . ." *Molina v. Lexmark International Inc.*, LA Super. Ct. No. BC339177, Order Granting Plaintiff's Motion for Attorney's Fees and Costs in the Amount of $5,772,008.07, filed Oct. 28, 2011 at 4.

14.     As my case list demonstrates, I have been involved with, and successful in, a wide range of complex civil rights cases, and have regularly brought fee motions under numerous federal and state fee shifting provisions. I frequently provide fee declarations in support of fee applications by other attorneys in civil rights cases, which have been cited in fee orders in the Central District to support fees that are in line with those that counsel for the Plaintiffs are

6

seeking in this case. See, e.g., *Rauda v. City of Los Angeles*, CV08-3128 CAS (PJW), Fee Order dated 12/20/2010, p.10 ("With respect to the reasonableness of the fees requested, the Court finds that plaintiffs have sufficiently documented the fees requested. It further concludes, and is satisfied based on the declarations of Barrett S. Litt and Carol A. Sobel in support of plaintiffs' motion that the hourly rates requested by plaintiffs are consistent with those in the relevant legal community for individuals having the stature of plaintiffs' counsel."); *Lauderdale v. City of Long Beach*, No. CV 08-979 ABC (JWJx), Fee Order dated 1/11/2010, p.11 ("Barrett S. Litt, another experienced civil rights litigator, also testified that the rates are in line with the Southern California market, his own experience, and fee awards in similar cases. (Litt Decl. ¶¶26–31.)").

15.     I regularly review a variety of material to keep abreast of rates charged and awarded for complex litigation in Southern California. I do this in a variety of ways, including contacting firms to provide (on either a public or confidential basis) current rate information; speaking with other attorneys familiar with complex litigation rates; reviewing court filings and cases regarding attorneys' fees (including both fee applications and fee awards); and obtaining other sources of fee information. I have also reviewed rates reported in Court Express for bankruptcy work by California law firms for the year 2009. My review of selected billing rate information has included, at various times, review of rates from various large law corporate firms. In particular, I have recently collected a wide variety of civil rights awards (either lodestar awards or lodestar crosschecks in civil rights class action fee awards) and class action awards in consumer cases with lodestar crosschecks, the results of which are described further on in this declaration. This has included review of rates sought and awarded to such boutique civil rights firms as my own firm(s); the ACLU; the Disability Rights Legal Center; Disability Rights Advocates; Hadsell, Stormer et

al.; the Law Offices of Carol Sobel; Schonbrun, DeSimone et al.; and awards to various individual practitioners.

## SOURCE MATERIALS RELIED ON FOR RATE OPINIONS

16.    The rate information on which I rely is set forth in full in Exhibit B to this Declaration, which is incorporated by this reference and is broken into three tables, described as follows:

> ➤ Table 1: *Civil Rights Lodestar Awards/Lodestar Crosschecks*. These are taken from reported attorney fee awards, or filed court orders, in civil rights cases where there was either a direct lodestar award or a lodestar crosscheck against a percentage of the settlement or award fee.

> ➤ Table 2: *Consumer/Wage & Hour Class Action Lodestar Crosschecks*. This is self-explanatory, and was taken from reported cases.

> ➤ Table 3: *Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports*. These are a firm's standard rates reported either in a court filing, referred to in a court decision, provided to counsel, or contained in the 2009 Court Express summary of bankruptcy filings referred to previously.

17.    Exhibit B contains three cuts of the same information, each containing three tables, organized and designated as follows: 1) organized by case; 2) organized by years of graduation, most to least; and 3) organized by rates, highest to lowest (based on the adjusted rate for the year 2014, which concept is described below). I draw on this rate information in addressing the reasonableness of the rates requested in the Defendant/Appellee's motion, and include what I consider the most relevant references in the body of this Declaration.

18.     All of the rates sought in this case are well within the rates charged by attorneys of comparable experience in the Southern California area for complex civil rights work. Below I address the rates sought in this case, and compare them to attorneys of comparable or lesser experience, skill and reputation seeking or charging comparable or lesser rates. In the charts that I attach as Exhibit B, and incorporate as relevant into the body of this Declaration, I provide the following information:

| Term | Description |
|------|-------------|
| Attorney | The name of the attorney awarded the rate listed or, for the commercial firms, their normal rates (or indicate if the individual identity is unknown) |
| Firm | The firm listed |
| Practice Yrs | The years in practice at the time of the award or, if it could be clearly determined from the opinion or other available information, the years in practice when the fee application was made. In parentheses are the years of law school graduation |
| Rate | The rate awarded in the case of awards, or normally charged for commercial firms |
| Year | The year of the award or the year of the fee application if those rates were used. |
| Adjusted Rate | An adjustment to the fee award to compensate for the passage of time, the basis for which is described in ¶¶ 20-27 below. |
| SuperLawyer | Whether the attorney listed is currently listed as a SuperLawyer, the reason for which is described in ¶ 28 below. |

9

19.     The name of the case in which the fee was awarded or, for commercial rates (where applicable) filed for, is noted by the use of a superscript number next to the name of the attorney. At the conclusion of the first set of charts in Exhibit B (and incorporated as relevant if the reference is used in the body of this Declaration), the name and case number, and/or Westlaw cite of the case is listed if the source is from a public filing. If the source is not from a public filing, the non-public source is identified and/or attached. Cases not in Westlaw, documents from a case file, and non-public documents relied upon (with the exception of Court Express) that are referenced by a superscript number are attached with a designated Exhibit Number (which number matches the superscript number).[1] If the case is in Westlaw, it is not attached.

20.     The "Adjusted Rate" is an inflation adjustment so that what that rate would be in 2014, adjusted for the passage of time. As is explained further below, the starting point for this adjustment is the mean (numerical average) of the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor, which is reproduced by Dr. Michael Kavanaugh in his website for the "Updated Laffey Matrix." The "Updated Laffey Matrix" has been cited, and relied on, by courts in D.C.[2].

---

[1] So, for example, if the superscript uses the number "81" to designate the case, then the exhibit, if attached, will be Exhibit 81. It will be attached if it is a non-public source or a court order not available on Westlaw.

[2] *See Salazar v. Dist. of Columbia*, 123 F. Supp. 2d 8, 13 (D.D.C. 2000); *Smith v. Dist. of Columbia*, 466 F. Supp. 2d 151, 155 (D.D.C. 2006) (the use of the updated *Laffey* Matrix is reasonable and consistent with previous precedent from our Court of Appeals, as well as from this Court in *Salazar*" and is "more accurate in that the calculation was based on increases/decreases in legal services rather than increase/decreases in the entire CPI"); *McDowell v. District of Columbia*, Civ. A.

21.     To adjust for inflation/rise in the cost of legal services, I began with the average of the Legal Services CPI for the six years 2008-2013, which came to 1.3016. See http://www.laffeymatrix.com/see.html. That this is a reliable and conservative national figure is confirmed by the fact that the inflation rate calculated for these six years was significantly lower than the previous six years reflected in the Updated Laffey Matrix, which had an average inflation factor of almost 5% (1.0481). While that was my starting point, I made a further adjustment because the national increases are not reflective of what is happening in markets such as Los Angeles, which is one of the most expensive legal markets, and places to live, in the country. The cost of living in Los Angeles is 50% above the national average. http://www.payscale.com/cost-of-living-calculator/California-Los-Angeles. According to one source, Los Angeles is the most expensive city in the country in which to live well, followed by San Francisco and New York, which were tied. http://www.huffingtonpost.com /2013/07/17/la -most-expensive-city_n_3612567.html. Whether that report is correct or not, it is beyond dispute that Los Angeles, along with San Francisco and Los Angeles, is one of the three most expensive living areas in the country.

22.     That Los Angeles is a special case in terms of cost of living is confirmed by the fact that the federal government, which adjusts pay for the same grade based on a cost of living adjustment keyed to the area in which a federal employee lives and works (referred to as locality pay), makes the highest adjustment for the three areas of Los Angeles, San Francisco and New York. See

No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001) ("Plaintiffs may point to such evidence as an updated version of the Laffey matrix"); *Salazar v. Dist. of Columbia*, 750 F. Supp. 2d 70, 72 (D.D.C. 2011) (affirming use of the adjusted rate based on the national legal services data for monitoring work in the case, and rejecting Defendant's contention that the United States Attorney's matrix should be used instead).

http://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2012/general-schedule/. Judicial salaries are similarly adjusted. See http://www.uscourts.gov/Careers/Compensation.aspx.

23.     Other information indicates that the 3% inflation factor reflected in the national average is low for the work and market involved here. The 3% figure is a national figure, and fees in major metropolitan markets will likely have risen more rapidly. Thus, for example, the Wall Street Journal reported in April 2013, that, in "the first quarter of 2013, the 50 top-grossing U.S. law firms boosted their partner rates by as much as 5.7%, billing on average between $879 and $882 an hour" and that, in 2012, "legal fees in general rose 4.8% and associate billing rates rose by 7.4%, according to a coming report by TyMetrix Legal Analytics, a unit of Wolters Kluwer, WKL.AE -0.57% and CEB, a research and advisory-services company. Those numbers are based on legal-spending data from more than 17,000 law firms." See "On Sale: the $1,150-Per-Hour- Lawyer", WSJ, April 9, 2013, http://online.wsj.com/news/articles.[1] These figures are considerably higher than the 3% inflation factor.

24.     Given that we are addressing attorneys handling complex federal litigation, placing them in the top ranks of attorneys, and the information described in the previous paragraphs, I used an inflation factor of 1.04 (4%) to

---

[1] See also, e.g., "Top Law Firms Still Tops in Rates, Billable Hours", Hildebrandt Institute, January 10, 2013, 22.  http://hildebrandtblog.com/2013/01/10/top-law-firms-still-tops-in-rates-billable-hours: "A survey from The National Law Journal (NLJ) (registration required) found that median partner rates were up 4.5 percent from 2011 to $517 an hour in 2012, and the median associate rate rose 3.5 percent to $323, with hourly rates ranging from $130 to $1,285 and a median hourly rate of $432. This gibes with the findings of the Major Lindsey & Africa (MLA) "Partner Compensation Survey 2012," which recorded an hourly rate range from $115 to $1,265 and an average partner billing rate of $584 (up from $555 in 2010)."

calculate the adjusted rate, which is slightly higher than the national average, for this declaration.

25.    The adjustment factor is merely a tool to approximate what the current rate for an attorney of the same years of experience would be awarded now, as opposed to when the award was actually made. As such, it does not account for increased experience or expertise. For example, a 2009 lodestar cross-check for me confirmed an $800 rate, which, in the adjusted dollars I have used, is approximately $973. Similarly, in that same case, the Court approved a rate of $710 for Carol Sobel, which, in the adjusted dollar calculation I used, amounts to $864. However, those are simply inflation/rise in rates adjustment, and do not account for increased experience and expertise gained in those five years. Thus, it is to be expected that the current rate for attorneys who have received previous awards will be meaningfully above the adjusted rate based on a prior award.

26.    Here, to illustrate that fee increases encompass both an inflation adjustment and adjustments for greater experience, I provide two specific examples of how actual fee increases for the same attorney over even a brief time rise more than the inflation factor I have used. At pages 20-21 below, in discussing the appropriate rate for Messrs. Kaye, McLane and Muller, I provide a Table 3 with relevant "Commercial" rates, I used, inter alia, fee awards to attorneys at Quinn Emanuel to project adjusted 2014 rates for certain years of experience.  The base rate for Quinn Emanuel attorney Diane Hutynan was taken from a 2012 decision in which Ms. Hutnyan's requested rate was $790 an hour. At the time of that award, Ms. Hutynan was practicing 15 years.   The next example in Table 3 is based on a 2008 award at $685 an hour to Danielle Gilmore, a 1983 graduate and also a partner at Quinn Emanuel.  At the time of her award, Ms. Gilmore was also practicing for 15 years.  The projection based on a standard percentage increase would put Ms. Hutnyan's current rate above Ms. Gilmore's projected 2014 rate. Given that Ms. Gilmore has four years additional

13

experience, her current rate would, no doubt, be considerably higher than Ms. Hutnyan's rate.  The same is true for the civil rights bar as illustrated in Table 1 at p. 23, which discuss Civil Rights Award rates as comparisons to the requested rates for attorneys LaHue and Weisberg. Shawna Parks' projected rate is calculated based on a 2009 award she received approving a rate of $525 an hour. Her projected 2014 rate, using only the inflation factor, is $639 an hour.  This is below the $665 an hour rate awarded to Ms. Parks by this Court in 2013 in *Communities Actively Living Independent and Free v. City of Los Angeles,* 2:090cv-00287 CBM-RZ-Doc # 255 (C.D. Cal. 6/10/13).

27.    I have spent the time I have explaining the adjustment factor used because, in analyzing the rates, I have used the adjusted rate, not the awarded or listed rate, to compare to requested rates for comparable years of experience. It is not a valid comparison to take a fee from five years ago for, for example, a 20 year lawyer, and compare it to a fee for a 20 year lawyer today because it does not account for the change in rates in today's legal dollars. (Nor, if it is for the same lawyer, does it take account of the fact that the lawyer is now five years more experienced than when the prior rate was awarded.)  The adjusted rate for this Declaration is based on the year 2014 because, even if rates are adjusted to coincide with law school graduations of June in a given year, any award in this case is very unlikely to occur before June 2014, making the appropriate measure the year 2014.

28.    I have identified those lawyers who are listed as SuperLawyers because it is one measure of an attorney's skill, experience and reputation. It is reasonable to conclude that an attorney who is listed as a SuperLawyer should be on the very high end of rates for attorneys of their years of experience, especially since, as the chart shows, comparable rates have been awarded or listed by attorneys of the same years of experience who are not identified as

14

SuperLawyers. The determination of whether someone is a SuperLawyer is based on a check of a member of my staff under my direction in January 2014.

29.     The years of practice for an attorney are based on either information directly provided by the source or, where it was not so provided, by checking the attorney's website or the California State Bar Member Search. In some cases, the year of admission to the Bar may not be completely reliable because there may be reasons that an attorney's years of admission to the California State Bar are less than the years of practice. For example, admission may be delayed by the Bar's check on an attorney, or may have delayed taking the California Bar or have first practiced in a different state. Where the attorney graduated from a California law school, it is likely that s/he graduated the same year as the Bar admission.

## RATES AND COSTS REQUESTED

30.     The rates being requested are for the lawyers identified in the table below, which includes their year of practice and whether they are listed as a SuperLawyer( by adding "(SL)" after their name. Separate tables are provided for §52.1 and § 1988 fees. The role that each of them played in the case (with the exception of myself, which is addressed in ¶40) is described in the accompanying Declaration of Ronald O. Kaye. For reasons explained in Paragraph 44, below, the hours spent by each biller have been separated into merits hours and hours spent working on attorney's fees and costs. The underlying billing records are attached to the Declaration of Caitlin Weisberg as Exhibit A (Merits Hours) and Exhibit B (Fee Motion and Costs Hours).

| § 52.1(h) Fees | | | | | |
|---|---|---|---|---|---|
| **Atty/Biller** | **Yrs Practice (Grad Date)** | **Rate** | **Hours (Merits)** | **Hours (Fee/Cost)** | **Total** |
| Barry Litt | 45 (1969) | $975 | 37.4 | 27.2 | $62,985.00 |
| Ronald Kaye | 26 (1988) | $775 | 1077.9 | 21.9 | $852,345.00 |
| David McLane | 28 (1986) | $775 | 429.2 | 3.3 | $335,187.50 |

15

| § 52.1(h) Fees | | | | | |
|---|---|---|---|---|---|
| **Atty/Biller** | **Yrs Practice (Grad Date)** | **Rate** | **Hours (Merits)** | **Hours (Fee/Cost)** | **Total** |
| James Muller | 28 (1986) | $775 | 946.4 | 11.5 | $742,372.50 |
| Kevin LaHue | 10 (2004) | $600 | 448.2 | 1.2 | $269,640.00 |
| Caitlin Weisberg | 6 (2008) | $500 | 458.9 | 16.8 | $237,850.00 |
| Julia White | Sr. Paralegal | $295 | 155.7 | 92.0 | $73,071.50 |
| Veronica Aguilar | Paralegal | $175 | 77.5 | 0 | $13,562.50 |
| Heath White | High tech paralegal | $235 | 80.0 | 0 | $18,800.00 |
| Lisa Mikhailova | Paralegal / Legal Asst. | $175 | 218.5 | 2.5 | $38,675.00 |
| John Srebalus | Paralegal / Legal Asst. | $175 | 16.0 | 0 | $2,800.00 |
| Vi Hohuynh | Law Clerk | $250 | 467.1 | 0 | $116,775.00 |
| **SUBTOTAL:** | | | 4412.8 | 176.4 | $2,764,064.00 |
| **SUBTOTAL AFTER 3% REDUCTION:** | | | | | $2,681,142.08 |
| **SUBTOTAL WITH 2.0 MULTIPLIER (merits only):** | | | | | $5,184,463.76 |
| **TOTAL (2.0 Multiplier):** | | | | | $5,362,284.16 |

| § 1988 / PLRA Fees | | | | | |
|---|---|---|---|---|---|
| **Atty/Biller** | **Yrs Practice (Grad Date)** | **Rate** | **Hours (Merits)** | **Hours (Fee/Cost)** | **Total** |
| Barry Litt | 45 (1969) | $189 | 18.9 | 7.7 | $5,027.40 |
| Ronald Kaye | 26 (1988) | $189 | 373.0 | 6.2 | $71,668.80 |
| David McLane | 28 (1986) | $189 | 177.0 | 0.9 | $33,623.10 |
| James Muller | 28 (1986) | $189 | 211.5 | 3.2 | $40,578.30 |
| Kevin LaHue | 10 (2004) | $189 | 134.2 | .3 | $25,420.50 |
| Caitlin Weisberg | 6 (2008) | $189 | 159.2 | 4.7 | $30,977.10 |
| Julia White | Sr. Paralegal | $189 | 47.4 | 25.9 | $13,853.70 |
| Veronica Aguilar | Paralegal | $175 | 5.7 | 0 | $997.50 |
| Heath White | High tech paralegal | $189 | 6.3 | 0 | $1,190.70 |

16

| § 1988 / PLRA Fees | | | | | |
|---|---|---|---|---|---|
| **Atty/Biller** | **Yrs Practice (Grad Date)** | **Rate** | **Hours (Merits)** | **Hours (Fee/Cost)** | **Total** |
| Lisa Mikhailova | Paralegal / Legal Asst. | $175 | 24.1 | .7 | $4,340.00 |
| John Srebalus | Paralegal / Legal Asst. | $175 | .3 | 0 | $52.50 |
| Vi Hohuynh | Law Clerk | $189 | 102.8 | 0 | $19,429.20 |
| **SUBTOTAL:** | | | 1260.4 | 49.6 | $247,158.80 |
| **SUBTOTAL AFTER 3% REDUCTION:** | | | | | $239,744.04 |
| **Plaintiffs' PLRA Contribution** | | | | | - $9,500 |
| **TOTAL:** | | | | | $230,244.04 |

31.    The costs requested to be awarded are as follows. The table below includes the costs previously submitted to the court in Plaintiffs' Bill of Costs, but the amount sought by Plaintiffs in their Bill of Costs is subtracted from the total amount of costs below. . The cost details are attached to the Declaration of Caitlin Weisberg as Exhibit C (KMBL Cost Detail) and Exhibit D (Muller Cost Detail).

| Costs | | | |
|---|---|---|---|
| **Cost Type** | **KMBL** | **Muller** | **Total** |
| Copying | $13,529.00 | $2,963.06 | $16,492.06 |
| Printing | $137.02 | -0- | $137.02 |
| Research | $7,236.72 | -0- | $7,236.72 |
| Messenger Service | $5,028.97 | $676.34 | $5,705.31 |
| Postage | $107.59 | $127.62 | $235.21 |
| Local Travel | $1,196.40 | $429.44 | $1,625.84 |
| Distance Travel | $6,327.25 | $55.08 | $6,382.33 |
| Parking | $730.50 | $1,143.10 | $1,873.60 |
| Court Fees | -0- | $705.00 | $705.00 |
| Witness Fees | $951.90 | -0- | $951.90 |
| Deposition Fees | $12,254.19 | $7,455.09 | $19,709.28 |
| Trial Transcripts | $521.82 | $38.70 | $560.52 |

17

| Video | $6,523.24 | $2,730.89 | $9,254.13 |
|---|---|---|---|
| Defense Expert Witness Fees | $3,060.00 | -0- | $3,060.00 |
| Consultants | $11,124.31 | $3,025.00 | $14,149.31 |
| Investigators | $1,170.00 | -0- | $1,170.00 |
| **SUBTOTAL:** | $69,898.91 | $19,349.32 | $89,248.23 |
| **Bill of Costs:** | | | -$35,313.46 |
| **TOTAL:** | | | $53,934.77 |

## KAYE, MCLANE, MULLER RATES

32.     I address each of the §52.1 rates sought in turn. I begin with Mr.
Kaye, who was lead counsel in this case. Numerous declarations (Paz, Re,
Genego, Watson) attest to Mr. Kaye's outstanding reputation and skill. Mr. Kaye
has been recognized as a SuperLawyer for several years, has received several
awards and recognition for his outstanding layering skills, and is a highly
experienced trial lawyer. For the past several years, he has been handling
complex civil rights law enforcement cases in addition to his criminal defense
practice. (See Kaye CV.) I address my personal experience with Mr. Kaye and
Mr. McLane, both of whom are now my partners, further on in this Declaration. I
consider a rate of $775 a reasonable rate for an attorney of Mr. Kaye's reputation,
skill and experience doing complex litigation. While it is on the high end of rates
for attorneys of Mr. Kaye's years of practice doing civil work, it is well supported
by prior civil rights awards, and commercial rates for similar work are well above
the requested rate. Below I list other awards or rates for attorneys of comparable
or fewer years who have these or similar rates. In doing so, as I mentioned above.
I rely on the adjusted rate in order to compare apples to apples. I supply these in
the three different tables previously described – civil rights awards, consumer
class actions lodestar crosschecks, and commercial rates.

//

18

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Michael Bien[9] | Rosen Bien Galvan & Grunfeld | 28 (2008) | $640 | 2008 | $810 | SL |
| Robert Rubin[20] | LCCR | 28 (1978) | $625 | 2006 | $855.36 | |
| Larry Paradis[13] | DRA* | 27 (1985) | $800 | 2012 | $865.28 | |
| Matthew Righetti[19] | Righetti Glugoski | 27 (1985) | $750 | 2012 | $811.20 | SL |
| Laurence Paradis[4] | DRA* | 26 (1985) | $730 | 2010 | $854 | SL |
| Daniel B. Kohrman[4] | AFL***** | 26 (1984) | $740 | 2010 | $866 | |
| Ron Elsberry[13] | DRA* | 25 (1987) | $725 | 2013 | $784.16 | |
| Ben Schonbrun[5] | Schonbrun, de Simone | 25 (1985) | $650 | 2010 | $760 | SL |
| Michelle Uzeta[13] | DRLC*** | 20 (1992) | $700 | 2013 | $757.12 | |
| Earnest Bell[15] | Law Offices of Earnest Bell | 20 (1988) | $600 | 2008 | $759.19 | |
| Julie Nepveu[4] | AFL***** | 19 (1991) | $660 | 2010 | $772 | |
| Melissa Kasnitz[4] | DRA* | 18 (1992) | $650 | 2010 | $760 | |
| Angela Padilla[20] | MoFo | 15 (1991) | $600 | 2006 | $821.14 | SL |
| Shawna Parks[13] | DRA* | 13 (1999) | $665 | 2013 | $719.26 | RS SL |
| Unnamed[10] | Bingham, McCutcheon | 13 (1997) | $655 | 2010 | $766 | |

   Table 1 shows many lawyers with comparable years of experience receiving comparable rates in adjusted dollars to those requested here. These are all based on documented court awards in civil rights cases, and thus don't reflect

19

commercial rates. For lawyers from large firms who received civil rights fee awards, the rates are significantly higher in adjusted dollars than those sought here when factoring in years of experience. For example, Angela Padilla, a 15 year attorney, received $600 eight years ago, which comes to $821 in adjusted dollars, and an unnamed Bingham McCutcheon attorney with 13 years' experience was awarded $665 in 2019, which comes to $766 in adjusted dollars. Larry Paradis from Disability Rights Advocates, then a 26 year attorney (the same as Mr. Kaye is now) received $730 in 2010, which amounts to $854 in adjusted dollars; in 2013, Mr. Paradis was awarded $800 (based on 2012 rates when he was a 27 year attorney), which comes to $865 in adjusted dollars.

Because it would consume an undue amount of space to list the cases, rate sources etc. relied upon in the body of this Declaration, I do not list them in the Declaration for any of the tables. Pages 13-16 of Exhibit B contain the full name of each reference used, and the source referred to, by superscript number. (For example, using the reference from Table 1 to Larry Paradis, superscript #13 refers to the Fee award in *Communities Actively Living Independent and Free v. City of Los Angeles*, 2:090cv-00287 CBM-RZ-Doc # 255 (C.D. Cal. 6/10/13) (lodestar award in settlement of ADA injunctive relief class action), the citation to which may be found at page 14 of Exhibit B.)

| Table 2: Consumer/Wage & Hour Class Action Lodestar Crosschecks [Rate by Years of Practice] | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Guy Wallace[51] | Schneider Wallace | 17 (1993) | $650 | 2010 | $760 | SL |
| Jonathan Selbin[57] | Lieff Cabraser | 16 [1993] | $600 | 2009 | $730 | |
| Eric Gibbs[55] | Girard Gibbs | 15 (1995) | $675 | 2010 | $789.65 | SL |
| Eric Gibbs[56] | Girard Gibbs | 15 (1995) | $675 | 2010 | $789.65 | SL |

Table 2 shows consumer class action attorneys with 15-17 years of experience, some of whom are SuperLawyers and some of whom are not, receiving over $730-$790 in adjusted dollars. These are attorneys regarding whom Mr. Kaye has greater experience by more than 10 years. Generally speaking a consumer class action is not more complex, and often may be less complex, than a complex civil rights case.

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports[ Rate by Years of Practice] | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Arturo Gonzalez[83] | MoFo | 28 (1985) | $950 | 2013 | $978.50 | SL |
| Unnamed[92] | Pachulski, Stang | 27 (1982) | $750 | 2009 | $869 | |
| Wayne Barsky[86] | Gibson Dunn | 26 (1983) | $905 | 2009 | $1,049 | |
| Brian J. Hennigan[89] | Irell & Manella | 25 (1983) | $775 | 2008 | $925.39 | SL |
| Unnamed[92] | Gibson Dunn | 25 (1974) | $790 | 2009 | $916 | |
| Marc Becker[81] | Quinn Emanuel | 24 (1988) | $1035 | 2012 | $1,098 | N/A |
| Unnamed[92] | White & Case | 24 (1985) | $750 | 2009 | $869 | |
| Unnamed[92] | Morrison & Foerster | 24 (1985) | $750 | 2009 | $869 | |
| Unnamed[84] | Lieff Cabraser | 24 (1988) | $775 | 2012 | $822.20 | N/A |
| Unnamed[92] | Pachulski, Stang | 24 (1985) | $675 | 2009 | $783 | |
| Unnamed[92] | Davis, Polk | 23 (1986) | $960 | 2009 | $1,113 | |
| Unnamed[85] | Paul Hastings | 23 (1998) | $850 | 2011 | $928.82 | N/A |
| Unnamed[92] | Weil, Gotscahl | 23 (1986) | $799 | 2009 | $926 | |
| Alejandro Mayorkas[90] | O'Melveny &Myers | 23 (1986) | $770 | 2009 | $893 | |

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports[ Rate by Years of Practice] | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Unnamed[92] | Pachulski, Stang | 22 (1987) | $725 | 2009 | $840 | |
| Unnamed[92] | Munger, Tolles | 22 (1987) | $725 | 2009 | $840 | |
| Marcellus McRae[86] | Gibson Dunn | 21 (1988) | $785 | 2009 | $910 | |
| Mark D. Kemple[88] | Greenberg Traurig | 20 (1989) | $675 | 2009 | $783 | SL |
| Unnamed[92] | Davis, Polk | 19 (1990) | $955 | 2009 | $1,107 | |
| Unnamed[92] | Klee, Tuchin | 19 (1990) | $850 | 2009 | $985 | |
| Jason D. Russell[82] | Skadden Arps | 18 (1993) | $1030 | 2011 | $1,125.51 | SL |
| Michal H. Strub[89] | Irell & Manella | 18 (1990) | $670 | 2008 | $800.02 | |
| Unnamed[85] | Paul Hastings | 17 (1994) | $725 | 2011 | $792.23 | N/A |
| Unnamed[84] | Lieff Cabraser | 17 (1995) | $650 | 2012 | $689.59 | N/A |
| Unnamed[91] | Paul Hastings | 16 (1994) | $725 | 2010 | $815.99 | |
| Diane Hutnyan[81] | Quinn Emanuel | 15 (1997) | $790 | 2012 | $838 | |
| Danielle Gilmore[87] | Quinn Emanuel | 15 (1993) | $685 | 2008 | $817.93 | SL |
| Unnamed[85] | Paul Hastings | 15 (1996) | $725 | 2011 | $792.23 | N/A |
| Thomas M. Riordan[90] | O'Melveny &Myers | 14 (1995) | $675 | 2009 | $783 | |

Table 3 shows a wide range of attorneys in commercial cases with as few as 14 years' experience to 28 years, with adjusted rates from $783 to over $1100 (again, based on adjusted dollars), substantially higher than those requested here for the attorneys over 20 years in practice. It is well established that civil rights

22

rates were intended by Congress to be comparable to complex commercial litigation such as antitrust. *See, e.g., Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1122-23 (C.D. Cal. 2008) ( "declarations establish that the hourly rates set are similar to those for attorneys of comparable skill and experience at the rates paid for complex federal litigation, which was Congress' intent for civil rights cases. *See City of Riverside v. Rivera*, 477 U.S. 561, 575-576, 106 S.Ct. 2686 (1986) (quoting Senate Report, at 6, U.S.Code Cong. & Admin. News 1976, p. 5913, supra, (Congress intended civil rights fees to be comparable to that for 'other types of equally complex Federal litigation, such as antitrust cases')"). There is nothing to suggest that the legal work involved in the rates referenced in Table 3 is more complex than a complex civil rights case. And many of the lawyers commanding these rates were not found in SuperLawyers, certainly suggesting that they were not more exceptional than Mr. Kaye.

33.    The requested rate for Mr. McLane is also $775 per hour. Mr. McLane, like Mr. Kaye, is a former federal public defender with extensive trial experience, and, like Mr. Kaye, has been handling complex civil rights litigation, in addition to his criminal practice, for the past ten years. He has also been listed as a SuperLawyer for the past several years. Although Mr. McLane has two years' more experience than Mr. Kaye, their experience is comparable and, given that Mr. Kaye was the lead counsel in the case, and had the primary trial responsibility, I believe that the same rate is appropriate for both. The rate sources provided above for Mr. Kaye apply equally to Mr. McLane.

34.    The requested rate for Mr. Muller is $700 per hour. Mr. Muller is an experienced civil rights attorney. Mr. Muller explains that his fees are generally the result of negotiation, and so he does not have any recent awards.  His most recent award was $450 in 2006. Using the formula explained above for the adjusted rate during those years, that $450 (when Mr. Muller had 20 years' experience), amounts to approximately $615 in adjusted dollars. Given his eight

23

years' additional experience since then, $700 is a reasonable rate for Mr. Muller. The rate sources provided above for Mr. Kaye apply also to Mr. Muller.

35.     The difference between the rate for Mr. Muller and for Messrs. Kaye and McLane is due to the fact that 1) Mr. Muller is a sole practitioner, making it difficult for him to handle a case of the complexity of this case on his own, 2) he asked then KMB (now KMBL) to come into the case as lead counsel, which it did, and 3) KMBL in general, and Mr. Kaye specifically, has extensive trial experience.

### LAHUE, WEISBERG RATES

36.     Next, I turn to attorneys LaHue (a ten year attorney and a Super Lawyer Rising Star) and Weisberg (a six year attorney), for whom the requested rates are $600 and $500 respectively.  Mr. Kaye speaks to each of them and their roles in his declaration, and I speak to each of them as well later in this Declaration. Although there is four years between them, I will provide support for both in the same table excerpts provided below and then will point to the relevant rates from those tables.

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Katherine Weed[13] | DRA* | 10 (2002) | $600 | 2012 | $648.96 | |
| Joseph J. Ybarra[1] | MTO** | 10 (2001) | $550 | 2011 | $618.68 | |
| Jennifer Bezoza[4] | DRA* | 10 (2000) | $570 | 2010 | $667 | |
| Shawna Parks[14] | DRLC | 10 (1999) | $525 | 2009 | $639 | RS SL |
| Jennifer Lee[13] | DRLC*** | 9 (2003) | $550 | 2012 | $594.88 | |
| Roger Heller[4] | DRA* | 9 (2001) | $560 | 2010 | $655 | SL |

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Matthew Strugar[13] | DRLC*** | 8 (2004) | $525 | 2012 | $567.84 | |
| Jacob A. Kreilkamp[1] | MTO** | 8 (2003) | $505 | 2011 | $568.06 | |
| Sage Reeves[14] | DRLC | 8 (2001) | $475 | 2009 | $578 | |
| Mary-Lee Smith[13] | DRA* | 7 (2005) | $555 | 2012 | $600.29 | |
| Kevin Knestrick[4] | DRA* | 7 (2003) | $535 | 2010 | $626 | |
| Anna Canning[3] | Schoenbrun, deSimon | 6 (2006) | $450 | 2012 | $487 | |
| Kasey Corbit[4] | DRA* | 6 (2004) | $500 | 2010 | $585 | |

| Table 2: Consumer/Wage & Hour Class Action Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Dylan Hughes[56] | Girard Gibbs | 10 (2000) | $545 | 2010 | $637.57 | SL |
| Dylan Hughes[55] | Girard Gibbs | 10 (2000) | $545 | 2010 | $637.57 | SL |
| Geoffrey Munroe[55] | Girard Gibbs | 7 (2003) | $445 | 2010 | $520.59 | RS SL |

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Unnamed[91] | Paul Hastings | 11 (1999) | $670 | 2010 | $783.81 | |
| Erik Swanholt[88] | Greenberg Traurig | 11 (1998) | $575 | 2009 | $700 | SL |
| Hillary A. | Skadden | 10 (2001) | $710 | 2011 | $798.65 | |

25

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Hamilton[82] | Arps | | | | | |
| Unnamed[91] | Paul Hastings | 10 (2000) | $660 | 2010 | $772.11 | |
| Jorge DeNeve[90] | O'Melveny &Myers | 10 (1998) | $620 | 2009 | $754 | |
| Unnamed[11] | Arnold & Porter | 9 (2004) | $625 | 2013 | $650.00 | N/A |
| Unnamed[85] | Paul Hastings | 9 (2002) | $630 | 2011 | $708.66 | N/A |
| Unnamed[92] | Morrison & Foerster | 9 (2000) | $535 | 2009 | $651 | |
| Unnamed[92] | Hennigan, Bennett | 9 (2000) | $505 | 2009 | $614 | |
| Hannah Cannom[93] | Milbank, Tweed | 8 (2006) | $800 | 2014 | $800 | SL RS |
| Unnamed[85] | Paul Hastings | 8 (2003) | $620 | 2011 | $697.42 | N/A |
| Unnamed[92] | White & Case | 8 (2001) | $655 | 2009 | $797 | |
| Allan Johnson[90] | O'Melveny &Myers | 8 (2001) | $565 | 2009 | $687 | |
| Suzanna Brickman[83] | MoFo | 7 (2006) | $650 | 2013 | $676.00 | |
| Unnamed[85] | Paul Hastings | 7 (2004) | $590 | 2011 | $663.67 | N/A |
| Revi-Ruth Enriquez[93] | Milbank, Tweed | 6 (2008) | $760 | 2014 | $760 | |
| Caitlin Hawks[93] | Milbank, Tweed | 6 (2008) | $760 | 2014 | $760 | |
| Unnamed[85] | Paul Hastings | 6 (2005) | $565 | 2011 | $635.55 | N/A |
| Unnamed[92] | White & Case | 6 (2003) | $600 | 2009 | $730 | |
| Unnamed[92] | Weil, Gotschal | 6 (2003) | $580 | 2009 | $706 | |

26

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Unnamed[92] | Gibson Dunn | 6 (2003) | $570 | 2009 | $693 | |
| Katherine Eklund[93] | Milbank, Tweed | 5 (2009) | $550 | 2014 | $550 | |
| Unnamed[85] | Paul Hastings | 5 (2006) | $530 | 2011 | $596.18 | N/A |
| Danielle Katzir[86] | Gibson Dunn | 5 (2004) | $525 | 2009 | $639 | |
| Katherine J. Galston[89] | Irell & Manella | 5 (2003) | $490 | 2008 | $620.01 | |
| Dena G. Kaplan[89] | Irell & Manella | 5 (2003) | $475 | 2008 | $601.03 | |
| Unnamed[92] | Davis, Polk | 4 (2005) | $680 | 2009 | $827 | |
| Unnamed[92] | Weil, Gotscahl | 4 (2005) | $500 | 2009 | $608 | |
| Multiple associates[86] | Gibson Dunn | 4 (2005) | $495 | 2009 | $602 | |
| Unnamed[92] | White & Case | 4 (2004) | $600 | 2009 | $730 | |
| Kimberly Svendsen[89] | Irell & Manella | 4 (2004) | $410 | 2008 | $518.78 | |

As the tables above demonstrate, both the $600 rate for Mr. LaHue and the $500 rate for Ms. Weisberg are very reasonable, and well within the range of rates previously awarded in civil rights cases or charged in commercial cases.

The Civil Rights and Consumer/Wage & Hour awards show several awards for ten year attorneys in the range of $650-$650 in adjusted dollars, including a 2012 award of $600. The commercial rates, as is generally true, are considerably higher, and reflect a multitude of billers from four or five years ago at rates well over $600 and some over $700 (and this is before the inflation adjustment).

27

The Civil Rights and Consumer/Wage & Hour awards similarly show several awards for six year attorneys in the range of $500-$550, or more, in adjusted dollars, including a 2010 award of $500 and awards in 2010 and 2012 of $535 and $555 for seven year attorneys. Again, the commercial rates are considerably higher, and reflect a multitude of billers from previous years ago at rates far above $500 and some above $550 or even $600 (again before any inflation adjustment).

## NON-ATTORNEY RATES

37.     The paralegal rates requested range from $295 for Julia White (a very senior paralegal who has been my primary paralegal for the past fifteen years, and who had extensive experience before coming to work for me), $235 for Heath White (a computer paralegal with 15 years of experience in his field), $175 or less for regular paralegals, and $250 for law clerks. The tables below demonstrate that the rates requested are quite reasonable. In the Civil Rights rates Table, there are rates in the $280-$300 range in adjusted dollars for senior paralegals, and well over $200 for paralegals generally. In the Commercial Rates Table, there is evidence of paralegal rates in the $290-$300 range from several years ago, and over $350 using adjusted rates. Similarly, the $250 amount for a law clerk is solidly within the range of prior awards or established rates.

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Senior paralegals[4] | DRA* | | $265 | 2010 | $310 | |
| Sr. Paralegal[15] | Litt, Estuar & Kitson | | $235 | 2008 | $297.35 | |
| Senior Paralegals[7] | Litt, Estuar & Kitson | | $225 | 2007 | $296.08 | |
| Sr. paralegal[8] | Litt, Estuar & Kitson | | $250 | 2012 | $270 | |

28

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Sr. paralegal[10] | Rosen Bien & Galvan | | $240 | 2010 | $281 | |
| Paralegals[4] | DRA* | | $225 | 2010 | $263 | |
| Paralegal[1] | MTO** | | $210 | 2011 | $236.22 | |
| Paralegal[1] | ACLU | | $200 | 2011 | $224.97 | |
| Litigation Assist[13] | DRLC*** | | $230 | 2012 | $248.77 | |
| ALS[1] | MTO** | | $250 | 2011 | $281.22 | |
| Summer Associates[13] | DRA* | | $250 | 2012 | $270.40 | |
| Summer associates[4] | DRA* | | $245 | 2010 | $287 | |
| Law Clerks[14] | MTO** | | $220 | 2009 | $268 | |
| Law Clerk[13] | DRLC*** | | $230 | 2012 | $248.77 | |
| Law student interns[8] | Litt, Estuar & Kitson | | $225 | 2012 | $243 | |
| Law student interns[3] | Schoenbrun, de Simon | | $200 | 2012 | $216 | |

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Sr. Paralegal[91] | Paul Hastings | | $330 | 2010 | $371.42 | |
| Paralegal[90] | O'Melveny &Myers | 5 (2004) | $225 | 2009 | $274 | |
| Paralegal[86] | Gibson Dunn | | $315 | 2009 | $383 | |
| Paralegal[86] | Gibson Dunn | | $300 | 2009 | $365 | |
| Paralegal[86] | Gibson Dunn | | $295 | 2009 | $359 | |
| Paralegal[87] | Quinn Emanuel | | $235 | 2008 | $297.35 | |

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Paralegal[89] | Irell & Manella | | $220 | 2008 | $278.37 | |
| Legal Assistant[82] | Skadden Arps | | $295 | 2011 | $331.83 | |
| Litigation Support Specialist[90] | O'Melveny &Myers | 4 (2005) | $260 | 2009 | $316 | |

## PERSONAL KNOWLEDGE OF THE SKILL AND EXPERTISE OF COUNSEL

38.     Mr. Kaye, Mr. Muller and Mr. McLane have submitted declarations from other attorneys attesting to their reputation, skill and experience, and have addressed the issue in their declarations. They are considered outstanding lawyers at the peak of their fields of criminal law and, more recently, civil rights law. I first worked with them in *Goldstein v. City of Long Beach*, a wrongful conviction case referenced in ¶12 of this declaration, which settled against the City of Long Beach for $7.95 Million, for which the three of us were awarded a CLAY award. I have discussed or consulted with them on a wide variety of civil rights cases, and it is clear that both have a full grasp of the nuances involved in effectively litigating complex civil rights cases, a detailed command of the facts of their cases, and a keen sense of trial strategy. I consider a rate of $775 a very reasonable rate for attorneys of their reputation, skill and experience doing complex litigation (which this case definitely qualifies as).  Indeed, it was these qualities that led me to become partners with them. I have always had, and continue to have, a large number of complex civil rights cases, and it was a priority for me to make sure that there were skilled attorneys in whom I felt confidence should I become unable to continue to practice at the level I have done

30

so for the past decades (although I have no intention of cutting back, I am now 69).

39.     I have also had the opportunity over the past couple of years to work extensively with Mr. LaHue and Ms. Weisberg. In the course of my career, I have worked with many lawyers of different levels of experience and ability. I place both Mr. LaHue and Ms. Weisberg in the top ranks of younger attorneys with whom I have worked, and believe that both have outstanding futures in the civil rights field.

**MY ROLE IN THIS CASE, MY HOURLY RATE AND SUPPORT FOR IT**

40.     During the months leading up to trial, and since the verdict, I have played an active, but limited, role in this case. I consulted extensively with trial counsel, particularly Mr. Kaye, regarding opening and closing arguments, challenges to the jury, the examination of key witnesses, jury instructions, the approach to damages, and potential issues related to a deadlocked jury. At times, for example in connection with jury instructions, I reviewed the papers being submitted to the court and made suggested revisions or did limited review of relevant cases.  Since the verdict, I have similarly consulted on issues that have arisen. Given my expertise on attorneys' fees, I assumed personal responsibility to oversee the preparation of the instant motion for attorneys' fees.

41.     I have not submitted declarations from other attorneys attesting to my reputation, skill and experience because I did not consider it necessary in light of my limited role in the case; the acknowledgment of various courts of my skill, experience and reputation, some of which are recited above in ¶12; and this Court's familiarity with my work from past cases. I can submit such declarations should the court wish me to do so.

42.     My hourly rate for the year 2014 is $975. That is the rate I charge for straight hourly work. On some occasions where I am being paid on a civil rights case, I use my current rate but discount it in exchange for payment of the

remainder of my then current rate, plus a premium above that, in the event of a
favorable resolution in which fees are obtained. For the most part, my work is
purely contingent fee work in which I am paid out of the proceeds from the case.
As with the fee support for the other rates, the tables below support my requested
rate. In my case, because most of the comparable awards in this District have
been my own, I rely particularly on showing that my requested rate is less than
those for high end commercial attorneys. For civil rights awards, the most
applicable awards are the following, some of which are the same or higher than
my requested rate in adjusted dollars.

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Jose R. Allen[4] | Skadden Arps | 34 (1976) | $930 | 2010 | $1,088 | SL |
| Sid Wolinsky[4] | DRA* | 49 (1961) | $835 | 2010 | $977 | |
| Barrett S. Litt[6] | Litt, Estuar & Kitson | 40 (1969) | $800 | 2009 | $973 | SL |
| Barrett S. Litt[7] | Litt, Estuar & Kitson | 38 (1969) | $725 | 2007 | $954.05 | SL |
| Barrett S. Litt[15] | Litt, Estuar & Kitson | 39 (1969) | $750 | 2008 | $948.99 | SL |
| Unnamed[10] | Rosen Bien & Galvan | 48 (1962) | $800 | 2010 | $936 | |
| Sid Wolinsky[13] | DRA* | 51 (1961) | $860 | 2012 | $930.18 | |
| Barrett S. Litt[8] | Litt, Estuar & Kitson | 43 (1969) | $850 | 2012 | $919 | SL |

In addition, numerous commercial rates of over $1000 in adjusted dollars
appear. This table includes several attorneys with less than 20 years' experience
whose rates exceed $1000 in adjusted dollars, and includes several rates of over
$1000 before an upward adjustment to current dollars.

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Thomas J. Nolan[82] | Skadden Arps | 40 (1971) | $1095 | 2011 | $1,231.73 | SL |
| Unnamed[92] | Davis, Polk | 23 (1986) | $960 | 2009 | $1,168 | |
| Unnamed[92] | Davis, Polk | 19 (1990) | $955 | 2009 | $1,162 | |
| Jason D. Russell[82] | Skadden Arps | 18 (1993) | $1030 | 2011 | $1,158.61 | SL |
| Daniel Perry[93] | Milbank, Tweed | 14 (2000) | $1135 | 2014 | $1135 | SL RS |
| Marc Becker[81] | Quinn Emanuel | 24 (1988) | $1035 | 2012 | $1,119 | N/A |
| Wayne Barsky[86] | Gibson Dunn | 26 (1983) | $905 | 2009 | $1,101 | |
| Unnamed[91] | Paul Hastings | 36 (1974) | $940 | 2010 | $1,099.67 | |
| Unnamed[85] | Paul Hastings | 33 (1978) | $940 | 2011 | $1,057.37 | N/A |
| Gordon Kirscher[90] | O'Melveny &Myers | 38 (1971) | $860 | 2009 | $1,046 | |
| Unnamed[92] | O'Melveny & Myers | 34 (1975) | $860 | 2009 | $1,046 | |
| Unnamed[92] | Klee, Tuchin | 19 (1990) | $850 | 2009 | $1,034 | |
| Daniel Kolkey[86] | Gibson Dunn | 32 (1977) | $840 | 2009 | $1,022 | |
| Arturo Gonzalez[83] | MoFo | 28 (1985) | $950 | 2013 | $988.00 | SL |
| Brian J. Hennigan[89] | Irell & Manella | 25 (1983) | $775 | 2008 | $980.62 | SL |
| Unnamed[84] | Lieff Cabraser | 42 (1970) | $900 | 2012 | $973.44 | N/A |
| Unnamed[84] | Lieff Cabraser | 38 (1974) | $900 | 2012 | $973.44 | N/A |
| Unnamed[92] | Weil, Gotscahl | 23 (1986) | $799 | 2009 | $972 | |

33

## THE METHODOLOGY FOR DIVIDING FEES BETWEEN §1988/PLRA AND § 52.1

43.     As is explained further in the Memorandum of Law, there was a challenge to the handling of attorney's fees in this case because of the disparity between PLRA and normal market rates. The general methodology was that, if the work related to the §52.1 claim, it was charged as §52.1 time, even if it was also relevant to the federal claim. The great majority of time fell into this category. Time that did not fall into this category was time that related exclusively to the federal claims. In a nutshell, this was a) time exclusive to Mr. Rodriguez, who did not have a state civil rights claim, b) time spent on the *Monell* issues that was not also relevant to §52.1 issues, c) time spent on qualified immunity, which is not a standard applicable under state law, and d) time spent on issues relating to the PLRA, which only applies to the federal claims.

44.     At my instruction, time spent working on this fee motion and on the bill of costs was segregated from other litigation time. This was done for two reasons. First, we ultimately divide the time between the federal and state law claim for the time spent on the attorney's fee motion based on the overall division of time in the case. Taking into account the divisions applied to individual billing records, the overall division for time billed on the merits was approximately 22% for §1983 work and 78% for work that related to or was intertwined with Plaintiffs' §52.1 claims.  This division was applied to the hours worked on this fee motion and on the bill of costs. Second, if the court does award a multiplier, it could conclude that a different multiplier should be applied to the substantive work and to the fee work, and the segregation of the two groups of time allows for that division.

45.     The work in dividing the time is described in greater detail in the Declaration of Caitlin Weisberg.

//

## BILLING JUDGMENT

46.     Billing judgment was exercised in two ways. First, where it was determined that individual entries should be reduced or eliminated, that occurred. For example, in my own case, I used the occasion of this case to completely revise and update my attorney fee references, a very laborious process, and one that could not be done by someone without my detailed knowledge of attorney's fees standards. I will use this information in other cases. I estimate that I spent 50 or more hours on this endeavor (which provided the basis for Exhibit B to this Declaration) that has not been billed to this case. I did bill some of my time when I was engaged in work specific to this case, including the time specific to this Declaration or the fee motion itself. Second, to account for any arguable overlap or duplication – which as Mr. Kaye's declaration explains, was scrupulously avoided – an additional 3% across the board discount was taken as a further exercise of billing judgment.

## STANDARD BILLING PRACTICES

47.     For all billers in this office, there is a standard record keeping procedure to account for time. All billers keep track of their time contemporaneously, and they enter it directly into the billing program. The time is now entered into a centralized billing system that I brought with me from my former office, called Rainmaker.  Before that, Mr. Kaye and others at KMB kept contemporaneous track of time in a time and billing program called Time Slips. When I merged my practice with theirs, I oversaw the coordination of the transfer of Time Slips time to Rainmaker, and so am personally familiar with the fact that the system I have described was in place at KMB.

48.     Since civil rights attorneys are often in a position of having to provide time sheets when litigation is not over (such as here, where there will be an appeal unless the case is settled), the normal practice of my firms – reflected in the time sheets here – is to limit detail in the description of activities, in order to

protect the confidentiality of the work being performed in the event the timesheets are disclosed. Entries will generally describe the activity and its subject matter briefly. Time is recorded in tenths of an hour. All the attorneys and other billers in this office have been trained on keeping track of time in this manner.

## COSTS ARE NORMALLY BILLED TO THE CLIENT

49.    In connection with my own practice of law in Los Angeles, and in investigating the practice of law firms in the Los Angeles area regarding standard billing practices, I have determined that it is the routine and common practice of firms handling complex litigation to charge fee-paying clients separately for copying, facsimile, long distance telephone charges, transportation and travel costs including airfare, car rental, parking and mileage, postal charges, overnight courier and messenger fees, fees for service of process and attorney service, court filing fees, computerized legal and database research, deposition transcripts and court reporter fees, witness fees, expert or consultant fees and other necessary out-of-pocket expenses. In both contingent fee retainers, and on the rare occasions that this office does retained civil rights cases, all of these are defined as costs for which the client is responsible to reimburse separately from the attorneys' and other billers' charges for their time. With the exception of expert fees, which are not recoverable under the relevant federal or state statutes here, reimbursement of all such costs is requested.

## A MULTIPLIER IS APPROPRIATE IN THIS CASE.

50.    Because of my experience and specialization in public interest and civil rights litigation, I am especially familiar with the availability of attorneys in the Southern California area to do such work.  Relatively few lawyers are available or willing to undertake such matters.  Thus, it is very important, when an attorney obtains a successful result for clients, as Plaintiffs' counsel did in this case, that the statutory attorneys' fees to which the attorneys are entitled are fully

36

1  awarded by the Court.  Given the challenges faced in these kinds of cases, and the

2  risks inherent in class action litigation in general, I suggest that the successful

3  outcome in this case was the result of the efforts and skill of all of the involved

4  attorneys, who took a substantial risk to vindicate the rights of their clients.

5  Accordingly, in my opinion, they should be awarded fees in the amounts sought

6  with a substantial multiplier.

7      51.    I have been awarded contingent risk enhancements in several cases.

8  In 2002, in the context of settlement of a large class action in which I was lead

9  counsel, my firm was awarded a fee award that amounted to more than a

10  multiplier of 2.0 by Magistrate Judge Woehrle in *Williams v. Block*, CV-97-

11  03826-CW (Central District of California). In *Bynum v. District of Columbia*,

12  Civil Action No. 02-956 (RCL), a strip search and overdetention class action in

13  Washington D.C. in which I was lead counsel, the class fund fee award amounted

14  to a multiplier of two. More recently, in *Craft v. County of San Bernardino, supra*

15  at §12, the class fund award resulted in a multiplier of over five, which Judge

16  Larson found reasonable.  In the case described in paragraph 9, in which I was an

17  expert witness on fee issues, the arbitrator awarded a multiplier of 1.75, based at

18  least in part on my testimony in that case. In *Molina v. Lexmark International*

19  *Inc*., LA Super. Ct. No. BC339177, Order Granting Plaintiff's Motion for

20  Attorney's Fees and Costs, filed Oct. 28, 2011 (discussed in ¶13(e) supra), the

21  Court awarded a multiplier of two. In the body of the Memorandum of Law in

22  support of the instant fee motion, citations to many other cases awarding

23  multipliers under state law are provided.

24      52.    I believe that a multiplier is necessary in a case of this type under

25  California law in order to be faithful to the market analysis explained in depth by

26  the California Supreme Court in *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001)

27  ("purpose of a fee enhancement, or so-called multiplier, for contingent risk is to

28  bring the financial incentives for attorneys enforcing important constitutional

37

rights … into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis").  Cases of this type entail substantial risk. The market rewards such risk by enhancing the lodestar to account for that risk. This case well illustrates the reason that such enhancements are necessary in order to promote the public policy underlying civil rights statutes by making them economically viable.

53.     I provide here just one example of how cases can end up taking far longer than initially anticipated, just as this one ended up taking less time than was perhaps initially anticipated, with a poor result, at the great expense to Plaintiffs' counsel, to illustrate the reasons for a multiplier. For the past 15 years, I have been lead counsel in a class action against the California Department of Corrections and Rehabilitation for using backscatter x-rays routinely on visitors (*Wisely v. State of California*). Over 10,000 hours went into litigating that case only, on the eve of trial, to have the defense announce that it had voluntarily permanently abandoned use of such machines for reasons unrelated to the litigation, and to have the damages claims dismissed on immunity grounds. When we filed the case, the information we had was that anyone scanned who showed a potential secreted item was subjected to a physical strip search. However, this turned out not to be so, which totally changed the character of the litigation. It is possible that no attorneys' fees will be awarded in that case which, for procedural reasons I will not explain, only ended in 2013 (and which is now the subject of appeal on certain points). The point of my raising this is that there are substantial risks in complex litigation when it is entered. Some go well; some do not. There can be very long delays that are very burdensome. When they do go well, counsel should receive full compensation, for when they do not, it is counsel that bears the cost.

//

//

38

## SPECIAL CHALLENGES IN PRISONER CASES

54.    This case exemplifies the need for such a multiplier. While this case was not necessarily novel in its basic outlines, it presented several challenges. Examples of legal challenges are the proper handling of the qualified immunity appeal and this court's jurisdiction or of limiting the evidence so that plaintiffs were not fatally prejudiced in the eyes of the jury. Most important was the basic challenge of the facts of the case itself – an array of law enforcement officers claiming that the plaintiffs were extremely dangerous and a grave threat, who had to be dealt with in the manner defendants did to protect both themselves and society more generally. Cases involving pursuit of civil rights claims by convicted prisoners present unique challenges due to widespread negative attitudes. Thus, nearly half the population believes felons have "too many" rights, and nearly 1/3 that they have "proven they should not be treated as citizens." Pinaire, Heumann &Bilotta, "Barred from the Vote: Public Attitudes Toward the Disenfranchisement of Felons," Fordham Urban Law Journal, Vol. 30, Issue 5 (2002), *available at* http://ir.lawnet.fordham.edu/cgi/viewcontent.cgi?article=1874&context=ulj. The lawyer handling such cases must determine how to make a juror's sense of fairness outweigh these ingrained negative attitudes. It places a great burden on plaintiffs' counsel, a burden reinforced by the Eighth Amendment standard that the conduct must be done maliciously and sadistically for the purpose of causing harm in order to violate a prisoner's rights.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 17, 2014 in Pasadena, California.

_____

Barrett S. Litt

39