**Exhibit 14**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CESSY LAUDERDALE, CORNELIO VERA, and BERTHA DAVIS, individually and on behalf of the class of similarly situated individuals,

     Plaintiffs,

  v.

CITY OF LONG BEACH, a public entity, LONG BEACH POLICE DEPARTMENT, a public entity,

     Defendants.

CASE NO.: CV 08-979 ABC (JWJx)

ORDER RE: ATTORNEY FEES AND COSTS

Plaintiffs Cessy Lauderdale, Cornelio Vera, and Bertha Davis, on their behalf and on behalf of similarly situated individuals, filed a motion on November 23, 2009, for reasonable attorney's fees and costs following the parties' settlement of this class action lawsuit. Defendants City of Long Beach and the Long Beach Police Department (the "City") opposed on December 14, 2009 and Plaintiffs replied on December 22, 2009. The Court found this matter appropriate for resolution without oral argument and vacated the January 11, 2010 hearing date. Fed. R. Civ. P. 78; Local Rule 7-15. Upon

consideration of the parties' papers and the case file, the Court
rules as follows.

**I.   BACKGROUND**

On February 13, 2008, Plaintiffs filed this class action lawsuit
against the City, alleging that the City had violated the rights of
people who are deaf or hard of hearing who have interacted, currently
interact, or will interact with the Long Beach Police Department
("LBPD"), by failing to take appropriate steps to effectively
communicate with these individuals.  The Complaint sought declaratory
and injunctive relief compelling the City to ensure effective
communication with individuals who are deaf or hard of hearing through
the provision of auxiliary aids and services and proper training of
LBPD officers on how to effectively communicate during official
interactions.

The Complaint and the motion for preliminary approval of the
class action settlement set forth the underlying facts in this matter,
and the Court need not summarize them here.

The parties ultimately entered a Settlement Agreement resolving
Plaintiffs' claims under Title II of the Americans with Disabilities
Act ("ADA"), Section 504 of the Rehabilitation Act, the Unruh Civil
Rights Act (Cal. Civ. Code §§ 51 et seq.), and the Blind and Other
Physically Disabled Persons Act (Cal. Civ. Code §§ 54 et seq.).  The
Agreement provides that, among other relief: (1) the LBPD will take
appropriate steps to ensure effective communication with the class
through the provision of auxiliary aids and services; (2) the LBPD
will implement and follow a policy entitled "Communication with People
who are Deaf or Hard of Hearing"; (3) the LBPD will make available
Video Relay Service/Video Interpreting equipment at the main LBPD

station within one year after final approval of the agreement for a minimum one-year period; and (4) the LBPD will train personnel on the Settlement Agreement and policy.  In the Agreement, the City conceded that Plaintiffs were prevailing parties for the purpose of attorney's fees.  The parties agreed that Plaintiffs would apply to the Court for a determination of the amount of fees.

Although the parties ultimately reached a settlement, Plaintiffs portray the negotiations as unnecessarily drawn out by the City, while the City claims the negotiations were protracted by Plaintiffs, especially because the City knew that prolonging the matter could expose it to more in fees.  In reality, the negotiations fell somewhere in the middle.

Before Plaintiffs filed suit, they sent a tort claims letter to the City in early 2007, which the City rejected.  (Parks Decl. ¶ 20.) Plaintiffs sent another detailed letter to the City in January 2008, which was again rejected by the City.  (Id. ¶ 20, Exs. H, I.) Plaintiffs then filed suit in February 2008.

The Court suggested settlement of the case at a June 16, 2008, conference with the parties and the first step to that settlement was to negotiate the policy that the City would eventually adopt.  The City began the process with the first of three attorneys, Principle Deputy City Attorney Belinda Mayes.  (Parks Decl. ¶ 21; Fudge Decl. ¶ 4.)  But Ms. Mayes left the City Attorney's Office in October 2008 and this matter was reassigned to Principal Deputy City Attorney Monte Machit, who met with Plaintiffs' counsel on December 15, 2008.  Machit informed Plaintiffs' counsel that the matter would be transferred again to Deputy City Attorney Randall C. Fudge, who worked on the matter from that time to the present.  (Parks Decl. ¶ 22; Fudge Decl.

¶ 8.)  Plaintiffs claim that, during these transitional periods, progress on settlement slowed.

Nevertheless, progress was made on the policy by January 2009 (which the LBPD began implementing), so the parties turned their attention to the Settlement Agreement itself, setting up a series of four meetings at the City Attorney's office in Long Beach.  (Parks Decl. ¶ 23.)  The preliminary drafts of the agreement exceeded twenty pages and the City objected to several terms, as did Plaintiffs, so "a significant amount of time was expended in re-drafting portions of the Settlement Agreement."  (Fudge Decl. ¶ 8; Parks Decl. ¶ 24, Ex. L (letter from Attorney Fudge noting that the negotiations were "a laborious process involving multiple revisions of a 20-some page agreement.").  Nevertheless, the parties eventually agreed on most of the issues.  (Fudge Decl. ¶ 9.)  The remaining issues were submitted to a five-hour mediation on June 4, 2009, and an agreement on injunctive and declaratory relief was reached in principle and the amount of damages settled on.  (Parks Decl. ¶ 25.)  From October 2008 through July 2009, the parties exchanged at least ten drafts of the proposed Settlement Agreement.  (Parks Decl. ¶ 27.)

But a final agreement was not immediately forthcoming.  Each side claims that the other sought to change, amend, or renegotiate some of the terms agreed to after the mediation, including aspects of the policy the LBPD had already implemented.  (Compare Parks Decl. ¶ 26 ("Although Plaintiffs' counsel believed they had an agreement in principle on the few remaining issues regarding injunctive and declaratory relief at the parties' mediation, Defendants' counsel sought to renegotiate a number of issues that were previously negotiated and agreed upon by the parties.") with Fudge Decl. ¶ 10

("Subsequently, in or about July 2009, Plaintiffs sought to amend the Policy by adding terms to the Policy contained in the Settlement Agreement.").) After much negotiation, the parties finally agreed that the City would issue a supplemental Training Bulletin to LBPD personnel. (Fudge Decl. ¶ 11.)

During the course of negotiations up to February 2009, the parties did not engage in discovery, other than a public records request by Plaintiffs before filing the Complaint. (Parks Decl. ¶ 28.) With discovery cut-off and class certification deadlines looming and no settlement reached, however, Plaintiffs moved forward with some discovery, which they hoped would reveal the extent of the LBPD's policies, procedures, and training, and, as a result, nudge the case closer to settlement. (Parks Decl. ¶ 29.) They served on the LBPD three sets of requests for production, two sets of requests for admissions and interrogatories, and served on the City two sets of requests for production, requests for admissions and interrogatories, and Plaintiffs deposed representatives from the LBPD and the City. (Parks Decl. ¶ 29.) The parties also exchanged correspondence in setting the deposition dates, which were moved several times. (Parks Decl. ¶ 30.) Ultimately, because deadlines were still approaching, Plaintiffs drafted a class certification brief and supporting declarations, although those documents were never filed with the Court. (Parks Decl. ¶ 31.)

Having executed the Settlement Agreement and presented it to the Court for approval, Plaintiffs now seek attorney's fees and costs for the work performed. Plaintiffs claim reasonable fees in the amount of $429,282.50 as calculated under the lodestar method, multiplied by 1.5 to reflect the inherent risk in the case and the results achieved, for

a total of $643,923.75. They also seek $10,378.95 in costs and $51,024.50 for the hours expended on the fees motion. The City, on the other hand, claims that Plaintiffs are entitled to no more than $167,340 in attorney's fees and $7,439.79 in costs, but does not dispute that Plaintiffs are entitled to $51,024.50 for the fees motions.

**II. DISCUSSION**

Plaintiffs' counsel, the Disability Rights Legal Center (the "DRLC") and the private law firm of Munger, Tolles & Olsen LLP ("MTO"), seek fees and costs under several statutes as the prevailing parties: the ADA, 42 U.S.C. § 12205; the Rehabilitation Act, 29 U.S.C. § 794a(b); the California Disabled Persons Act, Cal. Civ. Code § 55; and Cal. Civ. Code § 1021.5. The lodestar fees they seek (not including fees for the fees motion and costs) are as follows:

//

//

//

//

//

//

//

//

//

//

//

//

//

//

| Attorney | Year of Graduation | Rate | Hours | Amount |
|---|---|---|---|---|
| **DRLC** | | | | |
| Shawna L. Parks | 1999 | $525 | 99.00 | $51,975.00 |
| Sage Reeves | 2001 | $475 | 263.40 | $125,115.00 |
| Tiffany Green | 2005 | $375 | 225.40 | $84,525.00 |
| Matthew Strugar | 2004 | $400 | 9.60 | $3,840.00 |
| Law Clerks | | $165 | 81.80 | $13,497.00 |
| **Subtotal DRLC** | | | 679.20 | $278,952.00 |
| **MTO** | | | | |
| Kristina Wilson | 2006 | $350 | 263.60 | $92,260.00 |
| Bethany Woodard | 2005 | $395 | 118.70 | $46,886.50 |
| Robert Dell Angelo | 1992 | $550 | 9.90 | $5,445.00 |
| Law Clerks/Support Staff | | $65 to $220 | 30.60 | $5,739.00 |
| **Subtotal MTO** | | | 422.80 | $150,330.50 |
| **Total Lodestar** | | | 1102.00 | $429,282.50 |
| **with 1.5 Multiplier** | | | | $643,923.75 |

Generally, a prevailing party "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir. 2002) (quoting and applying standards from Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937, 76 L. Ed. 2d 40 (1983) to ADA claim); see also Armstrong v. Davis, 318 F.3d 965, 970-71 (9th Cir. 2003) (applying standard to ADA and Rehabilitation Act claims); Molski v. Arciero Wine Group, 164 Cal. App. 4th 786, 790, 79 Cal. Rptr. 3d 574, 577-78 (Ct. App. 2008) (interpreting Cal. Civ.

Code § 55).  The City agreed in the Settlement Agreement that Plaintiffs were "prevailing parties" here, which is consistent with controlling authority  See Barrios, 277 F.3d at 1134 ("Under applicable Ninth Circuit law, a plaintiff 'prevails' when he or she enters into a legally enforceable settlement agreement against the defendant[.]"); see also Estrada v. FedEx Ground Package Sys., Inc., 154 Cal. App. 4th 1, 16–17, 64 Cal. Rptr. 3d 327, 340–41 (Ct. App. 2007) (finding that disability class action obtaining awards for 209 drivers satisfied the "significant benefit," "public interest," and "large class of persons" requirements of section 1021.5).

Once a party is considered "prevailing," the Court must determine the reasonable amount of fees by calculating the "lodestar," which is the number of hours reasonably spent multiplied by a reasonable hourly rate.  Hensley, 461 U.S. at 433, 103 S. Ct. at 1939; Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).  The lodestar amount is also the touchstone for reasonable fees under California law.  See Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 579, 21 Cal. Rptr. 3d 331, 157 (2004).  The lodestar is presumed to provide reasonable fees, but "the district court may, if circumstances warrant, adjust the lodestar amount to account for other factors which are not subsumed within it."  Camacho, 523 F.3d at 978 (quoting Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)).  To make adjustments following calculation of the lodestar, the Court considers the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5)

the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Morales v. City of San Rafael, 96 F.3d 359, 363–64 & n.8 (9th Cir. 1996) (quoting Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975)), amended by 108 F.3d 981, 981 (9th Cir. 1997). The Court must explain how it reached the ultimate amount of fees awarded, although that explanation can vary somewhat in its level of detail depending on the magnitude of the variation from the amount requested and the amount awarded. See Moreno, 534 F.3d at 1111 (noting that "the district court can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation.").

**A.  Lodestar Amount**

Before applying any multiplier requested by Plaintiffs (which the Court will discuss below), Plaintiffs claim a lodestar of $429,282.50. (See Parks Reply Decl., Ex. A.)

**1.  Reasonable Hourly Rates**

Reasonable hourly rates are based upon the "prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 (1984). The relevant community is the "forum in which the district court sits." Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997). And the prevailing rate is the "'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and

reputation.'" <u>Id.</u> at 502 (citation omitted). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." <u>United Steelworkers of Am. v. Phelps Dodge Corp.</u>, 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiffs seek fees based upon the following prevailing rates in this District:

- $375/hour for Tiffany Green of DRLC, a 2005 graduate of University of California, Los Angeles School of Law;

- $475/hour for Sage Reeves of DRLC, a 2001 graduate of University of California, Davis School of Law;

- $525/hour for Shawna L. Parks of DRLC, a 1999 graduate of Boalt Hall School of Law at the University of California, Berkeley;

- $400/hour for Matthew D. Strugar of DRLC, a 2004 graduate of University of Southern California School of Law;

- $395/hour for Bethany Woodard of MTO, a 2005 graduate of University of Southern California School of Law;

- $350/hour for Kristina Wilson of MTO, a 2006 graduate of Northwestern University School of Law;

- $550/hour for Robert Dell Angelo, a partner of MTO and a 1992 graduate of University of California, Los Angeles School of Law; and

- $165/hour and $220/hour for law clerks at DRLC and MTO, respectively.

Plaintiffs have presented ample evidence that the rates they seek are reasonable in the Central District. Laurence W. Paradis, an experienced civil rights litigator and the Executive Director and Co-Director of Litigation of Disability Rights Advocates in Berkeley, California, testified that he is familiar with the DRLC and its attorneys and opined that the rates sought are consistent with market rates for attorneys with similar experience in the Southern California

market, and are consistent with the rates charged by his organization. (Paradis Decl. ¶¶ 6-12.)  Barrett S. Litt, another experienced civil rights litigator, also testified that the rates are in line with the Southern California market, his own experience, and fee awards in similar cases.  (Litt Decl. ¶¶ 26-31.)  Three other experienced civil rights litigators also submitted declarations all attesting that the rates Plaintiffs charge are consistent with market rates in Southern California.  (See Stormer Decl. ¶¶ 8-13; Mann Decl. ¶¶ 15-19; Harris Decl. ¶¶ 12-16.)

Indeed, two large law firms in the Los Angeles area – O'Melveny & Myers and Gibson, Dunn & Crutcher – charge similar rates for attorneys with equivalent experience.  In 2008, O'Melveny & Myers charged $450 per hour for a 2005 graduate (as compared to the $395 per hour for MTO's Bethany Woodard, also a 2005 graduate) and charged $675 per hour for a 1994 partner (as compared to $550 per hour for MTO partner Robert Dell Angelo, a 1992 graduate).  (Litt Decl. ¶ 21.)  In a case in which Gibson, Dunn & Crutcher partnered with the Los Angeles public interest law firm of Public Counsel, that firm charged $525 per hour for a 2004 graduate and $495 per hour for 2005 graduates.  (Litt Decl. ¶ 23.)  Finally, Mr. Paradis testified that his organization charges $375 per hour for its 2005 graduates and $420 per hour for its 2004 graduates.  (Paradis Decl., Ex. A.)[1]

Once the prevailing party provides evidence of the prevailing

---

[1]Although Mr. Paradis's organization is located in San Francisco, he opined that rates there and in Southern California are similar. The City offered no contradictory evidence.  See Bouman v. Block, 940 F.2d 1211, 1236 (9th Cir. 1991) (accepting testimony of litigator and expert on attorney's fees that market rates in San Francisco and California are similar).

market rates, "'[t]he party opposing the fee application has the burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in the submitted affidavits.'" Camacho, 523 F.3d at 980 (citation omitted; ellipsis in original). To carry this burden, the City offers the testimony of Andre Jardini, a legal auditor who provided an audit report on Plaintiffs' fee request, to show that Plaintiffs' counsel's rates are inflated.[2] He explained:

> Based on an Incisive Legal Intelligence publication entitled "The Survey of Law Firm Economics 2009 Edition", the average hourly billing rate for an attorney with 8 to 10 years of experience is $272. The lower quartile is $212 and the upper quartile $325. The average hourly rate for attorneys with five years experience like Matthew D. Strugar is $231 an hour and attorneys with two to three years experience like Tiffany Green average $186 hourly rate.

(Jardini Decl. ¶ 35.) The Court does not find Mr. Jardini's position persuasive. He does not include copies of the survey he cites and he

---

[2]Plaintiffs filed objections to the report of Andre E. Jardini in support of the City's opposition to the motion for attorney's fees. Plaintiffs claim he is not qualified as an "expert" under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Generally, under Rule 702, the Court acts as a gatekeeper before expert evidence goes to a jury, but "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." United States v. Brown, 415 F.3d 1257, 1269 (11th Cir. 2005). "Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." In re Salem, 465 F.3d 767, 777 (7th Cir. 2006). Plaintiffs mostly disagree with the substance of Mr. Jardini's conclusions, which the Court addresses infra as they are relevant to the Court's rulings. To the extent that any part of his testimony does not meet the standard of Rule 702, the Court has not considered it. The Court overrules Plaintiffs' other objections.

does not explain the methodology the authors of the survey might have used to arrive at the "average" billing rate. The survey could very well have included rates that encompassed all types of lawyers from solo practitioners to partners at the largest law firms and could have covered the entire country. That, of course, runs contrary to the requirement that reasonable rates be set at the "'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" See Barjon, 132 F.3d at 500, 502.

Mr. Jardini proposes a "blended rate" of $300 per hour, but again he does not explain how he reached this blended rate, which does not even seem to correlate with the survey he cited. (Jardini Decl. ¶ 36.) Nor does he cite any legal authority for using a blended hourly rate, which may not reflect a reasonable rate. Cf. S.E.C. v. Goren, 272 F. Supp. 2d 202, 208 (E.D.N.Y. 2003) (rejecting use of blended hourly rate because it "risks under- and over-compensating [attorneys] for their efforts."). The Court finds this evidence insufficient to rebut Plaintiffs' proposed rates and concludes that those rates are reasonable.

2. <u>Reasonable Hours Expended</u>

Plaintiffs' counsel spent a total of 1,102 hours litigating this case (not including hours spent on the fees motion), which Plaintiffs claim is reasonable. (Parks Reply Decl., Ex. A.)[3] Plaintiffs' counsel arrived at that number after making discrete deductions from their hours equal to twenty percent. (Parks Decl. ¶ 33, Ex. A.)

---

[3]This number reflects Plaintiffs' subtraction of 4.2 hours from their initial total (3.7 from the hours spent by Tiffany Green and .5 hours spent by Sage Reeves) based on conceded billing errors. (Parks Reply Decl. ¶ 5.)

Further, eighty percent of the hours expended were spent by attorneys at the associate level (and thus had lower billing rates) and that number increases to ninety percent once support staff and law clerks are included. (Parks Decl. ¶ 32, Ex. A.)

### a. Reduction for MTO's Involvement

First, the City argues that all the work done by the MTO attorneys was duplicative and unnecessary, so the 446.70 hours billed by the MTO attorneys should be excluded entirely from the reasonable hours spent on the litigation. (Jardini Decl. ¶¶ 26-32, 49.) Generally, billed time that includes unnecessary duplication of effort should be excluded from the lodestar. See Herrington v. County of Sonoma, 883 F.2d 739, 747 (9th Cir. 1989). Indeed, "courts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do." Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1286 (9th Cir. 2004) (internal citations omitted). Nevertheless, "[c]ommon experience indicates that lawyers often hire other lawyers to help them with specific issues in the case." Bouman, 940 F.2d at 1236. Of course, there is some degree of duplication that is necessary in any case, so "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." Moreno, 534 F.3d at 1112.

Here, MTO's participation was not unnecessarily duplicative. MTO brought its highly regarded civil litigation practice to the case, relying on its years of experience litigating complex cases to help bring the case to a favorable settlement. Likewise, the DRLC is

nationally recognized as an expert in the field of disability law and
undoubtedly assisted MTO attorneys on understanding the substantive
aspects of disability law, which may have reduced, not increased, the
number of hours MTO attorneys would have otherwise had to spend to
research and understand disability law. As one DRLC attorney
explained, Plaintiffs' counsel employed a "team approach at settlement
meetings, leveraging the DRLC's expertise in the subject matter with
the litigation skills and resources brought to bear by MTO." (Parks
Reply Decl. ¶ 10.)

Mr. Jardini opines that "MTO has used this matter as a training
ground for its younger associates to gain experience while providing
pro bono work" (Jardini Decl. ¶ 26), but he points to nothing to
suggest that the attorneys from MTO lacked competence to participate
in the case or that the DRLC attorneys engaged in any sort of
"training," apart from the normal supervision one would expect from
experts in the substantive law at issue. In fact, were the City
right, Plaintiffs could never have staffed the case appropriately no
matter what they did: on the one hand, the City complains that higher-
billing attorneys spent too much time on the case (Jardini Decl. ¶ 36
(claiming case was staffed in a "top heavy fashion")), but on the
other hand the City criticizes the use of lower-billing MTO attorneys
for alleged "training" purposes (Jardini Decl. ¶ 26). Whatever the
City believes should have been the proper staffing of the case, "the
district court may not set the fee based on speculation as to how
other firms would have staffed the case." Moreno, 534 F.3d at 1114.
Thus, the Court finds that a total elimination of the 446.70 hours
spent by MTO attorneys on the case is unwarranted.

Although MTO's presence was not unnecessarily duplicative as a

general matter, Mr. Jardini points to three specific instances where
utilizing multiple attorneys from both firms may have led to some
duplicative work.[4]  First, Mr. Jardini indicates that unidentified
entries from January 23, 2008 to March 14, 2008 of MTO's billing
records[5] indicate that Kristina Wilson spent 16.45 hours drafting the
complaint.  (Jardini Decl. ¶ 28.)  Similarly, unidentified entries
from February 4, 2008 to February 13, 2008, indicate that several DRLC
attorneys also spent approximately 13.3 hours reviewing and revising
the complaint.  (Id.)  The Court does find the 29.75 hours spent on
the complaint were likely duplicative.  The DRLC has brought two
similar deaf and hard-of-hearing class action cases before this court
(Parks Decl. ¶ 9), so they probably could have used at least some part
of those prior complaints to save time drafting the complaint in this
case.  Yet, a relatively junior MTO attorney (Kristina Wilson, a 2006
graduate) spent 12.4 hours from January 23, 2008 to February 4, 2008,
before DRLC attorneys seem to have reviewed any part of the draft
complaint.  Then another relatively junior DRLC attorney (Tiffany
Green, a 2005 graduate) spent two hours reviewing and revising the
complaint before she sent it to a more experienced DRLC attorney,
Shawna Parks.  And even after that, counsel spent an additional 11.3
hours reviewing and revising the complaint.

---

[4]Mr. Jardini includes these three specific instances in his
declaration.  He also created a chart of billing entries that he
suggests demonstrates other possible duplicate billing entries.  He
has not set out the information in a useful way, however, because the
Court cannot tell from his list whether the two firms actually
performed duplicate work.

[5]A further problem with Mr. Jardini's chart is that he does not
identify the discrete billing entries he adds together to reach his
cumulative totals.  Neither Plaintiffs nor the Court has any way to
verify the accuracy of each cumulative entry without that information.

As noted above, the DRLC brings its expertise in disability law to this case – and specifically its experience litigating deaf and hard-of-hearing class actions against municipalities – yet it apparently did not immediately lend that support to the complaint-drafting process, which likely prolonged the entire drafting process. Thus, the Court finds that the 12.4 hours spent by junior MTO associate Kristina Wilson before the DRLC attorneys reviewed the draft complaint was duplicative and unnecessary, as was the two hours DRLC junior attorney Tiffany Green spent before sending it to a more senior DRLC attorney. Although the Court is not entirely convinced that all of the remaining 15.35 hours spent by the two firms were still necessary, the City provides no basis to reduce that number further and the Court will not do so.

Second, Mr. Jardini identifies instances where multiple attorneys attended court appearances and depositions, which the City claims were overstaffed. As a general matter, "in an important class action litigation such as this, the participation of more than one attorney does not constitute an unnecessary duplication of effort." Probe v. State Teacher's Retirement Sys., 780 F.2d 776, 785 (9th Cir. 1986). Indeed, having multiple attorneys attend depositions, meetings and settlement conferences allowed counsel to contribute creative solutions, reduced the need for inter-office communications after meetings, and ameliorated disagreements over what actually went on at meetings. (Parks Reply Decl. ¶ 12.)

However, one DRLC attorney billed 5.9 hours and two MTO attorneys billed a total of eight hours for attending a deposition on April 27, 2009. (Jardini Decl. ¶ 29.) First, the Court has reviewed the actual billing records and they do not appear to correlate to Mr. Jardini's

entries.  The entry for the DRLC attorney on that date reflects 6.10 hours billed for attending the deposition, not 5.9, and the entries for the MTO attorneys on that date reflect 6.5 and 3.7 hours billed, for a total of 10.2 hours, not eight hours.[6]  Based on the numbers contained in the actual billing records, the Court finds duplicative the 3.7 hours spent by MTO associate Kristina Wilson, when an MTO associate with similar seniority (Bethany Woodard, a 2005 graduate) billed 6.5 hours for the deposition and DRLC attorney Sage Reeves (a 2001 graduate) billed 6.1 hours for the deposition.  Having one senior attorney and one more junior attorney attend the deposition was plenty; the third junior attorney was excessive.

The Court, however, does not find that having two DRLC attorneys and one MTO attorney attend the mediation in this case was duplicative.  Both Sage Reeves (again, a 2001 graduate) and Shawna Parks (a 2000 graduate) from DRLC attended the June 4, 2009, mediation, billing a total of 12.6 hours for the time preparing and attending.  Kristina Wilson also billed 8.8 hours for preparing for and attending the mediation.[7]  First, participation of more than one attorney at a mediation does not automatically constitute an unnecessary duplication of effort.  See Kim v. Fujikawa, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989).  Second, the mediation was far more important in this case than the deposition discussed above.  Unlike the deposition, the mediation sat at the very crossroads of the

---

[6]The Court also notes that the MTO attorneys spent a total of 17.7 hours preparing for and attending the deposition, but subtracted 7.5 hours from that to arrive at 10.2 hours actually billed.

[7]Again, Mr. Jardini's calculation of eight hours for Ms. Wilson's hours billed was inaccurate based on the billing records.

resolution of this case. The parties had agreed to some terms of a
settlement, but needed a neutral to finalize it. The Court hesitates
to second-guess the choice of two senior DRLC attorneys to attend with
the assistance of a junior MTO associate, since an agreement may not
have been reached if both senior DRLC counsel had not brought to bear
their expertise and experience. The Court will not subtract hours on
this basis.

### b. Specific Reductions for DRLC Hours

The City also seeks to reduce DRLC's hours based on improper
billing for overhead, conducting excessive interoffice communication,
and for committing errors within its bills.

Mr. Jardini identifies 27.05 hours he claims were improperly
spent on "overhead," including "calendaring, scheduling and confirming
meetings, issues regarding retainer agreements, and electronic
filing." (Jardini Decl. ¶ 37.) In some circumstances, "attorneys'
fees for administrative and secretarial tasks . . should be considered
general overhead to run a law office," and already compensated in the
reasonable hourly fee, Eklund v. City of Seattle, No. C06-1815Z, 2009
WL 2019119, at *4 (W.D. Wash. July 2, 2009) (citing Keith v. Volpe,
644 F. Supp. 1312, 1316 (C.D. Cal. 1986)), but only if that is the
billing custom in the relevant market, see Trustees of Constr. Indus.
& Laborers Health & Welf. Trust v. Redland Ins. Co., 460 F.3d 1253,
1257 (9th Cir. 2006). The City has provided no evidence that this is
the practice in the Central District. Thus, the Court cannot subtract
these hours on that basis.

It is clear, however, that "[i]t is simply not reasonable for a
lawyer to bill, at her regular hourly rate, for tasks that a non-
attorney employed by her could perform at a much lower cost." Davis

<u>v. City & County of San Francisco</u>, 976 F.2d 1536, 1543 (9th Cir. 1992), <u>vacated in part on other ground by</u> 984 F.2d 345, 345 (9th Cir. 1993); <u>see also</u> <u>Redlands Ins. Co.</u>, 460 F.3d at 1257.  The Court has reviewed the entries for the hours claimed to be "overhead" or administrative and finds that most of them, while not models of billing clarity, arguably require the skills of an attorney to be performed.  For example, on June 14, 2007, Tiffany Green spent three-tenths of an hour responding to an email from a law clerk "re questions about Long Beach Case . . . and Section 1983 COA," which certainly entails attorney-level work.  Similarly, on December 18, 2008, Sage Reeves billed one-tenth of an hour in a telephone conference with the City's counsel Randall Fudge "re scheduling," which also could require an attorney's experience, especially if the scheduling issue was disputed.  On September 21, 2009, Sage Reeves billed two-tenths of an hour for "Legal research re filing with Court re need for settlement conference/extension," which again, is obviously attorney-level work.  And several entries reflect work performed by Tiffany Green on retainer agreements, which also entails attorney skill.

Not every entry identified needed an attorney to perform it, however.  For example, on July 2, 2007, Tiffany Green spent one-tenth of an hour emailing "Cessy Lauderdale – re videophone," which the Court suspects was intended to set up videoconferencing and required no attorney-level skill.  On January 25, 2008, Tiffany Green billed .05 of an hour with the entry "Gave to SAC to be mailed off with a check for 20.00," which certainly could have been done by a non-attorney.  Similarly, several times Ms. Green simply forwarded electronic notices sent by the Clerk's office when a document is

electronically docketed, yet she charged one-tenth of an hour each time.  On June 3, 2009, Sage Reeves spent .2 of an hour drafting an "email to clients re mediation location and directions," which appears to entail nothing but logistics.  And in September and October of 2009, an unidentified attorney by the initials of "M.D." (who the court presumes is Matthew D. Strugar, who bills at $400 per hour) spent half an hour "preparing" to mail declarations and cover letters to the named Plaintiffs, spent .6 of an hour compiling and assembling exhibits for the declaration of Barrett Litt, and spent .9 of an hour compiling documents for the fee motion and settlement approval, none of which required an attorney's skill, and especially not one at $400 an hour.

Rather than chronicle every improper entry here, the Court has reviewed the entries Mr. Jardini identified as "overhead" and deducts 3.65 hours spent on clerical and administrative work that were improperly billed at attorney rates.[8]

Next, the City claims that the DRLC attorneys spent an excessive 73.5 hours conferring among themselves and an excessive 56.6 hours conferring with MTO attorneys.  Mr. Jardini proposes – without legal authority or factual support – that the 73.5 hours be reduced by half to 36.75 and the 56.6 hours be eliminated entirely.[9]  The Court will

---

[8]The Court notes that, on June 10, 2008, a law clerk billed 6.3 hours for "Discovery matter: indexed defendant's initial disclosures." That task could have reasonably required the expertise of a law clerk or paralegal, especially if some sort of summary or analysis of the documents was required.  Thus, it was compensable at the law clerk rate of $165 per hour.

[9]On the hours spent conferring with MTO attorneys, the Court only presumes Mr. Jardini proposes eliminating the hours entirely, based on the summary chart included in his declaration (Jardini Decl. ¶ 49)

(continued...)

not do so.

There is nothing inherently wrong with conferencing with co-counsel in a case; in fact, "conferences between attorneys to discuss strategy and prepare for oral argument are an essential part of effective litigation." McKenzie v. Kennickell, 645 F. Supp. 437, 450 (D.D.C. 1986) ("Such supervision is necessary to avoid wasteful or disorganized efforts by inexperienced lawyers keeping fee claims within reasonable bounds."); see also Berberena v. Coler, 753 F.2d 629, 632-33 (7th Cir. 1985) (finding compensable the hours attorneys "spent mostly in consultation, negotiation, and on the telephone," which "were of key importance to obtaining the consent decree" in the case). Conferences are especially important in cases like this one, where more junior attorneys took the laboring oar while more senior attorneys supervised, because "meetings between junior and senior lawyers to discuss the progress of research and review completed assignments are reasonable and appropriate means to secure proper supervision and efficient staffing of large class actions cases such as this." McKenzie, 645 F. Supp. at 450.

Moreover, the total number of hours the City complains were excessively spent on consultation – 130.1 – amounts to just under twelve percent of the total 1102 hours spent. Given that the parties conducted only limited discovery, no motion work, and the case settled before going to trial, it is unremarkable that conferences accounted for this proportion of time. The City provides no cogent reason why

---

[9](...continued)
because his actual testimony in this section of his declaration is
unintelligible (Jardini Decl. ¶¶ 43-44).

this amount of conferencing was excessive, and the Court finds none.[10]
See Prison Legal News v. Schwarzenegger, 561 F. Supp. 2d 1095, 1104
(N.D. Cal. 2008) (rejecting request to reduce fees by eight percent
for excessive conferences because "Defendants have provided no
evidence or argument that any conference was excessive or
duplicative.").

Next, the City points out several entries it claims are the
result of duplicative billing errors and requests a reduction of 10.3
hours. The DRLC attorneys conceded that 3.7 hours were billed by
Tiffany Green in error and half an hour was billed by Sage Reeves in
error (and those deductions are already reflected in the 1102 hours
sought by Plaintiffs). They argue that the other entries were correct
for a simple reason: the same attorney can work on the same task at
two separate times in a single day. Indeed, all the remaining
"errors" that Mr. Jardini points out appear to fall within that
category, and, in some instances, even reflect different amounts of
time spent on the same task. The Court finds Plantiffs' explanation
reasonable and will not deduct the remaining 6.1 hours from the total
hours spent.

Finally, the City argues that the DRLC spent an excessive number
of hours drafting the settlement agreement in this case, which Mr.
Jardini calculates at 46.4 hours. Mr. Jardini instead suggests that
the proper number should be twenty-four hours because the settlement
in this case was similar to the settlement agreement in a similar case
litigated before this Court. See Valenzuela v. County of Los Angeles,

---

[10]Even the City's own expert, Mr. Jardini, opined in another case
that conferences among co-counsel are not unreasonable, but beneficial
to a case. (Parks Reply Decl., Ex. E at 7-8.)

No. CV 02-902 ABC (JWJx).

The Court rejects the request for several reasons.  First, Mr. Jardini provides no explanation of how he arrived at the 46.4 hours, so the Court cannot tell whether that number accurately reflects only hours spent on drafting, or included hours spent on any other tasks related to the settlement agreement, such as research, conferences, consultation with clients, etc., and these tasks were obviously unique to this case.  Second, while Mr. Jardini suggests that the hours were excessive because the DRLC attorneys could have simply copied portions of the settlement agreement in <u>Valenzuela</u>, Plaintiffs submit a detailed declaration from DRLC attorney Shawna Parks explaining that the negotiations over the contents of the settlement agreement here reflected "the needs of this case, including operational aspects of the LBPD, the specific problems encountered by people who are deaf or hard of hearing and who have interacted with the LBPD, and advances in technology since the <u>Valenzuela</u> settlement."  (Parks Reply Decl. ¶ 6.) The Court has reviewed the two agreements and notes that the settlement agreement here was not simply a carbon copy of the settlement in <u>Valenzuela</u> and it is unsurprising that the parties spent a substantial amount of time finalizing it.  (Parks Reply Decl. ¶¶ 7-9.)  Thus, the Court declines to subtract any hours for this work.

### c.   Total Hours Deducted

The Court concludes that Plaintiffs reasonably spent 1080.25 hours on the case, which reflects the following deductions from Plaintiffs' proposed 1102 hours:

- • - 12.4 hours spent by MTO associate Kristina Wilson on drafting the complaint;

- • - 3.7 hours spent by MTO associate Kristina Wilson to prepare for and attend the April 27, 2009, deposition;

- • - 2 hours spent by DRLC attorney Tiffany Green on the complaint; and

- • - 3.65 hours spent as clerical and administrative work, 1.45 of which was billed by Tiffany Green, .2 billed by Sage Reeves, and two of which were billed by attorney Matthew D. Strugar.

    4.    Total Lodestar Amount

Based on the above analysis, the Court calculates the lodestar amount as $421,458.75, which is broken down as follows:

| Attorney | Year of Graduation | Rate | Hours | Fees | Notes |
|---|---|---|---|---|---|
| **DRLC** | | | | | |
| Shawna L. Parks | 1999 | $525 | 99.00 | $51,975.00 | |
| Sage Reeves | 2001 | $475 | 263.20 | $125,020.00 | Reflects .2 hour reduction |
| Tiffany Green | 2005 | $375 | 221.95 | $83,231.25 | Reflects 3.45 hour reduction |
| Matthew Strugar | 2004 | $400 | 7.60 | $3,040.00 | Reflects 2 hour reduction |
| Law Clerks | | $165 | 81.80 | $13,497.00 | |
| **Subtotal DRLC** | | | 673.55 | $276,763.25 | |
| **MTO** | | | | | |
| Kristina Wilson | 2006 | $350 | 247.50 | $86,625.00 | Reflects 16.1 hour reduction |
| Bethany Woodard | 2005 | $395 | 118.70 | $46,886.50 | |
| Robert Dell Angelo | 1992 | $550 | 9.90 | $5,445.00 | |
| Law Clerks/Support Staff | | $65 to $220 | 30.60 | $5,739.00 | |
| **Subtotal MTO** | | | 406.70 | $144,695.50 | |
| | | | | | |
| **Total Lodestar** | | | 1080.25 | $421,458.75 | |

**B.    Use of a Multiplier**

Plaintiffs seek to apply a multiplier of 1.5 to the lodestar amount under California law "to account for the contingent risk of the litigation and the extraordinary results achieved."  Even though a multiplier is not available under federal fee-shifting statutes based

upon the contingency nature of a case, the Ninth Circuit has held that when a plaintiff is entitled to fees for both federal and California state claims, a federal court may apply a contingency multiplier under California law. See Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1478—79 (9th Cir. 1995).[11] To determine whether a multiplier is appropriate, the Court considers factors similar to those considered under federal law, such as "the novelty and difficulty of the issues presented, the quality of counsel's services, the time limitations imposed by the litigation, the amount at stake, and the result obtained by counsel." City of Oakland v. Oakland Raiders, 203 Cal. App. 3d 78, 83, 249 Cal. Rptr. 606, 609 (Ct. App. 1988).

While this case involves important issues and Plaintiffs obtained substantial relief, Plaintiffs are not entitled to a multiplier. The case was not particularly difficult, given that the parties never needed to litigate applicable legal standards and the city all but conceded liability at the outset of the lawsuit. Likewise, the DRLC has reached settlements in at least two other similar cases against municipalities. (Parks Decl. ¶ 9.) Furthermore, the lion's share of the work in this case was spent on negotiating a settlement agreement. Negotiations began early in the case and enabled the parties to avoid

---

[11]Even under federal fee-shifting statutes, the Court may adjust the lodestar in light of additional considerations, including the results obtained. Hensley, 461 U.S. at 434. However, a "strong presumption" exists that the lodestar figure represents a "reasonable fee" and should be enhanced only in "rare and exceptional cases." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986). To overcome the strong presumption that the basic fee is reasonable, the fee applicant bears the burden of coming forward with "specific evidence" that the lodestar amount is unreasonably low. See Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (citing Delaware Valley, 478 U.S. at 565). This showing must be based on factors not already subsumed in the lodestar calculation. Id.

motion work and most discovery.  Counsel was certainly well-equipped
to bring the case to a favorable resolution for Plaintiffs and the
class, but the reasonable hourly rates to which Plaintiffs' attorneys
are entitled more than adequately account for the quality of counsel's
representation.  See Morales, 96 F.3d at 363-64 (noting that the Court
may adjust lodestar figure "on the basis of the Kerr factors that are
not already subsumed in the initial lodestar calculation.").  The
Court also appreciates that Plaintiffs' counsel may have had to forego
some other clients to pursue this case, but once again that fact is
adequately reflected in the lodestar amount.  See id.

Plaintiffs cite Beasley v. Wells Fargo Bank, 235 Cal. App. 3d
1407, 1419, 1 Cal. Rptr. 2d 459, 466 (Ct. App. 1991), overruled on
other grounds by Olson v. Auto. Club of S. Cal., 42 Cal. 4th 1142,
1151, 74 Cal. Rptr. 3d 81, 87 (2008), to argue that the purpose of
using a contingency risk multiplier "is to compensate for the risk of
loss generally in contingency cases as a class," (emphasis in
original), and such a risk is present in disability class action cases
(Parks Decl. ¶¶ 34-37; Stormer Decl. ¶ 15).  Yet, the DRLC has brought
several cases involving deaf or hard-of-hearing individuals against
public entities and those cases have settled, suggesting the risks in
these specific types of cases are not so high that a multiplier is
necessary to assure class action plaintiffs obtain representation.[12]

The Court has already calculated the lodestar amount at over
$400,000, more than twice the amount of fees to which the DRLC agreed
in the Valenzuela case.  The Court recognizes that the settlement here

---

[12]The Court notes as well that the lodestar amount of fees,
including any enhancement, assessed against the City would fall on the
taxpayers.  See Serrano v. Priest, 20 Cal. 3d 25, 49, 141 Cal. Rptr.
315, 328 (1977).

was harder-fought than the one in <u>Valenzuela</u> and some of the issues raised in this case were different from those in <u>Valenzuela</u>, but those differences are adequately reflected in the lodestar. Applying a multiplier on top of that is unwarranted.

## C. Reasonable Costs

Plaintiffs also seek reimbursement for costs expended in the litigation in the amounts of $2,367.25 to the DRLC and $8,011.70 to MTO. (Parks Decl., Ex. A.)  The City does not dispute that Plaintiffs are entitled to costs generally.  <u>See</u> 42 U.S.C. § 12205; Cal. Code Civ. Proc. § 1032(b).  Nor does the City dispute that the DLRC should recover the full $2,367.25 it seeks.  Thus, the Court awards the DRLC its full $2,367.25 in costs.

The City does dispute the amount sought by MTO, however.[13]  Mr. Jardini identifies two possible duplicate entries on the costs billing records submitted by MTO: (1) a duplicate charge of $30 for a filing fee on June 25, 2008; and (2) a duplicate charge on March 10, 2009, for a court reporter for a deposition to occur on April 27, 2009.  As to the first charge, it appears that the entries were not for "filing fees," but each was for a "Certified Case Records Request" to the Superior Court.  It is possible that these two entries are not duplicates, but two separate requests.  But Plaintiffs were unable to respond to the City's argument because they belatedly filed a notice of errata and supplemental submission to which the City appropriately responded after briefing had otherwise concluded.  Therefore, the

---

[13]In their initial request, Plaintiffs omitted the itemized list of costs for MTO.  Following the City's filing of its opposition, Plaintiffs recognized the error and filed an errata including the missing information.  The City then filed a supplemental declaration from Mr. Jardini analyzing the costs.

Court accepts the City's explanation and subtracts $30 from MTO's costs.

MTO's costs billing records also include a duplicate charge for a court reporter at a deposition on April 27, 2009. MTO's records reflect that Kristina Wilson paid $1,143.22 to Barkley Court Reporters on March 10, 2009, in advance of a deposition scheduled on April 27, 2009. A second entry on July 23, 2009, reflects that MTO attorney Bethany Woodard also paid $1,143.22 to Barkley Court Reporters for a deposition on April 27, 2009. Both entries share the same invoice number of 368523 and nothing in the entries indicates that they were intended to be separate payments. Again, because Plaintiffs' notice of errata and the City's response came after the close of briefing and Plaintiffs provided no explanation of the duplication, the Court can only conclude that these entries were in fact duplicative. Thus, the Court subtracts $1,143.22 from MTO's costs and awards a total of $6,838.48 in costs expended by MTO.[14]

//

//

//

//

//

//

//

---

[14]Mr. Jardini also renews his opinion that MTO's involvement in the case was unnecessary and duplicative, and therefore subtracts costs from MTO's costs billing records to arrive at a total of $5,072.54. For the reasons discussed supra, the Court rejects his position that MTO attorneys were entirely unnecessary to the case and declines to subtract any costs on that basis.

1          //

2          //

## C.  Fees for the Fees Motion

Plaintiffs also seek fees for the time spent on the fees motion:

| Attorney | Year of Graduation | Rate | Hours | Fees |
|---|---|---|---|---|
| **DRLC** | | | | |
| Shawna L. Parks | 1999 | $525 | 35.10 | $18,427.50 |
| Matthew Strugar | 2004 | $400 | 21.50 | $8,600.00 |
| **Subtotal DRLC** | | | 56.60 | $27,027.50 |
| **MTO** | | | | |
| Kristina Wilson | 2006 | $350 | 23.80 | $8,330.00 |
| Bethany Woodard | 2005 | $395 | 36.60 | $14,457.00 |
| Robert Dell Angelo | 1992 | $550 | 2.20 | $1,210.00 |
| **Subtotal MTO** | | | 62.60 | $23,997.00 |
| | | | | |
| **Total Requested** | | | 119.2 | $51,024.50 |

The City does not dispute that Plaintiffs may recover fees for work done in litigating attorney's fees.  See, e.g., Thompson v. Gomez, 45 F.3d 1365, 1366 (9th Cir. 1995).  The City also does not dispute the amount presented by Plaintiffs of $27,027.50 for DRLC attorneys and $23,997.00 for MTO attorneys, for a total of $51,024.50.

The Court nevertheless feels compelled to reduce the amount of fees incurred on the fees motion by 10% for time spent on a frivolous dispute over the date of the hearing on this motion.  The Court may, in its discretion, shave up to 10% off the fees sought without reviewing and commenting on billing records entry-by-entry.  See In re Smith, 586 F.3d 1169, 1174 (9th Cir. 2009); Moreno, 534 F.3d at 1112. That includes deducting excessive hours spent on a fees motion.  See Anderson v. Dir., Office of Workers Compensation Programs, 91 F.3d 1322, 1325 (9th Cir. 1996).

Plaintiffs originally filed this motion on November 23, 2009 and noticed the hearing for December 14, 2009. On December 1, 2009, the parties filed a stipulation with the Court purporting to move that hearing date. The stipulation did not clearly indicate which party drafted it (the document contained the City's counsel's caption, but the docket indicates that Plaintiffs' counsel filed it), but it was so deficient that the Court not only denied it, but made clear its displeasure with the parties' failures. (Docket No. 55.) The Court did, however, grant the parties the opportunity to refile it properly.

That should have been the end of the matter. But apparently the parties could no longer agree on the new hearing date, due in no small part to the Plaintiffs' obstinance. (See Docket No. 56.) To protect its interests in opposing the fees motion, on December 4, 2009, the City filed an ex parte application to set the new hearing date. In response, Plaintiffs' counsel filed a notice of non-opposition. They claimed the City acted prematurely in filing the ex parte application, but the City was right to act promptly, as the Court had already pointed out that the City missed the previous deadline to file its opposition to the fees motion, which could have resulted in forfeiture of any chance to oppose. (See Docket No. 55.) Plaintiffs never provided a good explanation as to why they had not simply worked with the City's counsel to file a new stipulation. The Court finds that the work spent on this motion practice – which the Court calculates at approximately 10% of the total work done on the fees motion – was unnecessary and unreasonable.

Moreover, even if the motion work were not unnecessary, the hours spent on it were grossly excessive. The Court need not – and will not – chronicle every excessive hour, but a few entries are worth noting.

For example, on December 7, 2009, the date the non-opposition to the ex parte application was filed, MTO associate Kristina Wilson spent 2.6 hours, for a total cost of $910, drafting the "notice of non-opposition to defendant's ex parte application to continue hearing dates; revise and file notice of non-opposition to defendants' ex parte motion to continue hearing dates." On the same date, MTO attorney Bethany Woodard also spent some part of one hour, at a cost of $395, conferencing regarding the non-opposition, as well as revising a draft of it. And then DRLC attorney Shawna Parks spent .4 hours, at a cost of $210, "receiv[ing] and review[ing] draft non-opp to briefing schedule on fees motion, edits to same." The Court can conceive of no justification for spending four hours at a total cost of over $1,500 on a document that should have been one line (maybe two if Plaintiffs felt compelled to explain their position) indicating Plaintiffs did not oppose the City's request.

Similarly, MTO attorneys spent 3.6 hours on December 4, 2009, at a cost of $1,350, conferencing with each other and with opposing counsel, and researching the law on ex parte applications. Again, the Court can identify no reason why MTO associates spent nearly four hours discussing and researching the ex parte application that asked for relief that Plaintiffs had previously agreed to.

The Court has reviewed the billing records for the motion work and concludes that a 10% reduction from Plaintiffs' requested fees on the fees motion is warranted, for a total reasonable award of $45,922.05. Of that, $24,324.75 goes to MTO and $21,597.30 goes to

the DRLC, which is proportionate to each firm's share of the original total fee amount requested.[15]

**III. CONCLUSION**

Based on the above analysis, the Court finds that Plaintiffs are the prevailing parties entitled to reasonable attorney's fees and costs. The Court further finds that Plaintiffs' counsel's hourly rates are reasonable and, after taking the deductions from the total hours as noted above, finds the hours spent were reasonable. The Court denies Plaintiffs' request to apply a multiplier. The Court also awards reasonable costs to Plaintiffs, except those deducted above, and awards Plaintiffs the fees spent in connection with the fees motion with a 10% reduction. Thus, the Court AWARDS Plaintiffs the reasonable fees and costs in the amount of $476,586.53, which breaks down as follows:

| DRLC Lodestar Fees | $276,763.25 | | MTO Lodestar Fees | $144,695.50 |
|---|---|---|---|---|
| DRLC Fees on Fees | $21,597.30 | | MTO Fees on Fees | $24,324.75 |
| DRLC Costs | $2,367.25 | | MTO Costs | $6,838.48 |
| | | | | |
| DRLC Total | $300,727.80 | | MTO Total | $175,858.73 |
| | | | | |
| Total Award | $476,586.53 | | | |

//

//

//

//

//

---

[15]In other words, MTO's share of the original $51,024.50 was $27,027.50, or 53%, and the DRLC's share was $23,024.50, or 47%. The Court has used those same proportions to determine the reduced award for each firm.

1    Plaintiffs are ordered to lodge with the Court **within 10 days of**

2    **the date of this Order** a proposed order that reflects the Court's

3    ruling.[16]

4    **IT IS SO ORDERED.**

5

6    DATED: January 11, 2010    _____

                                          AUDREY B. COLLINS

7                               UNITED STATES DISTRICT CHIEF JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

[16]In conjunction with this Order, the Court has also signed the

25   proposed Order granting preliminary approval of the class action
     settlement and class certification.  The parties should treat this

26   Order as triggering paragraphs 9 and 10 of that Order for issuing
     class notice, for filing any counsel objections, and for calculating

27   the hearing date on the final approval of the settlement,
     notwithstanding the Court's request here that Plaintiffs file a

28   conforming proposed order on the attorney's fees and costs award.