RONALD O. KAYE (No.145051)
E-mail: rok@kmbllaw.com
BARRETT S. LITT (SBN 45527)
DAVID S. McLANE (No. 124952)
KEVIN LaHUE (No. 237556)
KAYE, McLANE, BEDNARSKI & LITT, LLP
234 East Colorado Boulevard, Suite 230
Pasadena California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

JAMES S. MULLER (No. 126071)
E-mail: jamesmullerlaw@att.net
LAW OFFICES OF JAMES S. MULLER
225 East Broadway, Suite 107F
Glendale, California 91205
Telephone: (818) 536-7922
Fax: (818) 536-7499

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HERIBERTO RODRIGUEZ, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, et al.<br><br>Defendants. | Case No. CV 10-6342 CBM (AJWx)<br><br>**DECLARATION OF CAITLIN S. WEISBERG IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES**<br><br>Date:   June 16, 2014<br>Time:   10:00 a.m.<br>Ctrm:   2 (Spring St.) |

**DECLARATION OF CAITLIN S. WEISBERG**

I, Caitlin S. Weisberg, declare as follows:

1. This declaration is submitted in support of Plaintiffs' Motion for Fees and Costs. The facts set forth herein are within my personal knowledge or knowledge gained from review of the pertinent documents. If called upon, I could and would testify competently thereto.

2. I am an attorney licensed to practice law in the State of California and an associate of the law firm Kaye, McLane, Bednarski & Litt, LLP (KMBL). As explained in the Declaration of Ronald O. Kaye, filed simultaneously with this declaration, KMB (the predecessor of KMBL) became co-counsel of record for Plaintiffs in *Heriberto Rodriguez v. County of Los Angeles, et al.*, CV 10-6342-CBM(AJWx) in late 2011, after the litigation had already commenced.

3. I assisted in various aspects of the *Rodriguez* litigation, primarily with respect to the drafting of motions and oppositions. I am personally familiar with the course of the litigation from the time that KMB became involved through the present. By virtue of working on discovery issues relating to discovery conducted prior to KMB involvement, as well as review of relevant documents and records, I am also familiar with the litigation and pre-litigation activities that occurred in 2008 through 2011.

4. For purposes of the instant fee motion, I have spent many hours reviewing attorney and paralegal billing records for the *Rodriguez* litigation from September 1, 2008 through February 28, 2014. Hours expended after February 28, 2014, on this fee motion and other post-judgment litigation, will be reviewed and submitted with Plaintiffs' reply brief.

5. Attached hereto as Exhibit A is a chart reflecting attorney and paralegal billing records for hours expended in the litigation of the merits of this case. Exhibit A does not include the following categories of billing entries, which

were removed and set aside during the course of my review: (a) Hours spent on Plaintiffs' motion for sanctions for Defendants' failure to comply with the Court's discovery orders (Dkt. No. 149), for which fees have already ordered by the Court and paid by Defendants; (b) Hours spent on Plaintiffs' fee motion, which are included in a chart that is attached to this declaration as Exhibit B, for reasons explained in Paragraph 44 of the Declaration of Barrett S. Litt; (c) Hours spent litigating the interlocutory appeal in the Ninth Circuit, which will be addressed at a later point in the litigation, as necessary.

6. My review of the billing entries reflected in Exhibits A and B was performed for two reasons: (a) to identify the billing entries for merits work that included work related exclusively to Plaintiffs' federal claims under 42 U.S.C. §1983 (i.e., work that did not also relate to Plaintiffs' parallel state claims under California Civil Code §52.1) and (b) to remove erroneous entries and identify other entries as candidates for exclusion for other reasons, including the exercise of billing judgment. I was assigned this task because an attorney's knowledge of the substance and progress of the litigation, as well as the legal distinctions between the state and federal claims, was essential to recognizing the work encompassed by the billing entries and dividing that work accordingly.

7. In broad brush terms, the litigation that related exclusively to Plaintiffs' federal claims falls into four categories, as explained below:

    a. Time exclusive to Plaintiff Heriberto Rodriguez. Mr. Rodriguez asserted only federal civil rights claims under §1983, and did not assert any parallel state law claims. Accordingly, all time spent exclusively on Mr. Rodriguez's claims is §1983 time.

    b. Time exclusive to establishing liability against Defendant County of Los Angeles under *Monell v. Dep't of Soc. Services*, 436 U.S. 658 (1978). The County was not a defendant with respect to Plaintiffs'

state civil rights claim and was therefore only liable, if at all, under federal law.

  c. Time exclusive to the litigation of qualified immunity issues, including the jurisdictional dispute caused by certain defendants' interlocutory appeal based on qualified immunity. The doctrine of qualified immunity does not apply to Plaintiffs' § 52.1 claims.

  d. Time exclusive to the litigation of issues relating to the Prison Litigation Reform Act ("PLRA"). The PLRA does not apply to state law claims.

8. The column of Exhibit A titled "%1983 Only" contains the percentage of each billing entry that represents work performed on Plaintiffs' federal civil rights claims that did not have any cross-over utility for Plaintiffs' state civil right claims. The following general rules were applied to determine the figures in that column:

  a. For litigation activities that were exclusively attributable to Plaintiffs' federal claims, "100%" would be entered. As an example, Defendants filed a motion to dismiss on the ground that Plaintiffs had failed to exhaust their administrative remedies as required by the PLRA. All billing entries for Plaintiffs' opposition to defendants' motion to dismiss and related litigation activities were categorized as 100% § 1983.

  b. For litigation activities that included substantive work, some of which was exclusive to § 1983 issues and some of which was relevant to Plaintiffs' state claims, a division was established based on the substance of the project. The divisions were determined by Plaintiffs' counsel based on knowledge of the litigation activities and, as necessary, review of relevant documentation. As an example, time spent drafting the Complaint included drafting those portions of the complaint that set forth Plaintiffs' federal

claims. Counsel categorized such billing entries as 15% 1983. Related litigation activities (such as preparing the Complaint for filing and filing the proofs of service) were categorized as general time compensable under state law because these activities would have been performed regardless of the substance of the Complaint.

c. For time entries that included both § 1983-only work and other work, an estimate was made of how much of the time described in the entry related to the § 1983 activity. As an example, an entry for .2 hours might read "telephone call with opposing counsel re motion to dismiss, video evidence." As explained above, the motion to dismiss is 100% 1983, but litigation relating to video evidence would be relevant to both the state and federal claims and therefore billed under § 52.1. The split for this hypothetical entry would be 50% § 1983.

9. Prior to my review of the billing entries, each attorney reviewed his own billing records and made preliminary identifications of those entries that contained 1983-only time. Taking into account these identifications, the final divisions were determined by Mr. Kaye and Mr. Muller, with my assistance and input. These divisions were applied by me while reviewing the billing records.

10. Listed in the chart below are the major litigation activities which included at least some substantive § 1983-only work, as described in Paragraph 8(a) and 8(b) above, along with the percentage determined to be 1983-only.

| Activity | Explanation | Percent § 1983 only |
|---|---|---|
| Complaint (drafting) | Explained above. | 15% |
| Motion to Dismiss, Dkt. No. 24 (all litigation activities) | This motion to dismiss and response was limited to PLRA exhaustion issues. | 100% |

4
Declaration of Caitlin S. Weisberg

| Activity | Explanation | Percent § 1983 only |
|---|---|---|
| Discovery Requests and Responses, Discovery Negotiations and Disputes | These divisions were made on a case by case basis. Plaintiffs estimate that, for the general written discovery, approximately 10% of the written discovery and resulting discovery negotiations are exclusively attributable to § 1983 work. | various, generally 10% |
| First Motion to Compel, Dkt. No. 114 | This motion concerned personnel complaints against the individual defendants which were relevant to the § 52.1 claims against individual defendants and defendant supervisors, as possibly providing impeachment or 404(b) evidence. | 0% |
| Second Motion to Compel, Dkt. No. 116 | This motion primarily concerned evidence regarding deputy gangs within the sheriff's department, which was relevant to Plaintiff's joint action and conspiracy theories against individual defendants. The motion also sought historical use of force evidence to be used against the County. | 25% |
| Third Motion to Compel, Dkt. No. 138 | This motion concerned many different document requests. Overall, it appears that approximately 35% of the topics were directed toward *Monell*-only evidence. | 35% |
| Witness depositions and interviews | Substantive work relating to witnesses (preparing for depositions, taking depositions, interviewing) was divided according to the percentages in Paragraph 11. Unless the witness was 100% § 1983, other work relating to the witness, such as drafting deposition notices, was treated as not exclusive to § 1983. | By witness, see Para. 11 |

| Activity | Explanation | Percent § 1983 only |
|---|---|---|
| Motions for Summary Judgment, Dkt. Nos. 214, 219 | Defendants' motions for summary judgment (Dkt. Nos. 214, 219) presented somewhat of a complication because, although the motions themselves were devoted almost exclusively[1] to the defeat of Plaintiffs' federal claims, much of the work spent responding to motions—reviewing and summarizing evidence, researching substantive law regarding excessive force and participant liability, etc.—was later used to prosecute Plaintiffs' state civil rights claims against the deputies and supervisors. Accordingly, fact work has been allocated by subject matter and 50% of the other work on the MSJ briefing has been allocated to 1983. | Various, generally 50% |
| Litigation on issues relating solely to *Monell* liability | Explained above. | 100% |
| CCJV Litigation | Although the Report of the Citizen's Commission on Jail Violence (CCJV) and the evidence presented to the CCJV was relevant, in part, to the claims against Defendant Captain Cruz and other supervisors, a limiting instruction at trial restricted this evidence to Plaintiffs' *Monell* claims. Out of an abundance of caution, Plaintiffs have treated all CCJV-related work as § 1983 only. | 100% |
| Litigation on behalf of Plaintiff Rodriguez | Explained above. | 100% |

---

[1] Plaintiffs' § 52.1 claims were addressed briefly on page nineteen of the Defendants' first-filed motion for summary judgment (Dkt. No. 214), but most legal issues relating to the application of § 52.1 were litigated in the context of Defendants' motion for judgment on the pleadings (Dkt. No. 200).

6
Declaration of Caitlin S. Weisberg

| Activity | Explanation | Percent § 1983 only |
|---|---|---|
| Motions *in Limine* | The motions in limine covered a broad variety of topics, which were allocated to 1983 on a motion-by-motion basis.<br>P-MIL 1 (CCJV for MSJ) – 100%<br>P-MIL 2 (Excl. plf. gang info) – 0%<br>P-MIL 3 (Excl. plf. crim. hist.) – 0%<br>P-MIL 4 (Excl. Shoji) – 0%<br>P-MIL 5 (Adm. video depos) – 0%<br>P-MIL 6 (CCJV for Trial) – 100%<br>D-MIL 1 (Bifurcate) – 100%<br>D-MIL 2 (Excl. other def. acts) – 50%<br>D-MIL 3 (Excl. other inmates) – 0%<br>D-MIL 4 (Excl. Escalante) – 0%<br>D-MIL 5 (Excl. policy changes) – 100%<br>D-MIL 6 (Excl. "culture of violence") – 100%<br>D-MIL 7 (Excl. % UoF sustained) – 100%<br>D-MIL 8 (Excl. Olmsted, Bartlett, Tiedeman) – 25%<br>D-MIL 9 (Excl. negotiation efforts) – 0%<br>D-MIL 10 (Excl. Plfs' character) – 0%<br>D-MIL 11 (Excl. Plfs' statements) – 0%<br>D-MIL 12 (Excl. Martin, Stauring) – 15%<br>D-MIL 13 (Excl. Indemnification) – 0%<br>D-MIL 14 (Excl. UoF reports) – 100% | Various |
| Exhibits for Trial (Selecting, Preparing), Trial Memo, PTCO, Jury Instructions, Trial (in-court time) | Plaintiffs estimate that 15% of the substantive pretrial and trial work pertained to § 1983-only issues. | 15% |
| Verdict Forms, Judgment (drafting) | Between Plaintiff Rodriguez and the § 1983 claims, Plaintiffs estimate that 60% of the substantive work performed on verdict forms and Judgment was § 1983-only. | 60% |
| Punitive Damages | At trial, Plaintiffs sought punitive damages under federal law. | 100% |

| Activity | Explanation | Percent § 1983 only |
|---|---|---|
| *Chuman* Motion and other district court litigation pertaining to Defendants' interlocutory appeal | This litigation is the direct result of defendants' qualified immunity assertions, which did not provide any defense to Plaintiffs' § 52.1 claims. | 100% |
| Other | Many divisions were determined on a case-by-case basis and were not sufficiently significant, in terms of hours spent, to appear on this chart. These ad hoc divisions were made using the same principles applied above. | Various |

11. The substantive work relating to particular witnesses was divided according to the percentages of § 1983-only time listed below:

| Witness | Explanation | Percent 1983 |
|---|---|---|
| Plaintiff Rodriguez | Plaintiff with only federal claims | 100%[2] |
| Plaintiffs Nunez, Sanchez, Trinidad, and Flores | Plaintiffs with state and federal claims | 0% |
| Inmate Andres Madrigal | Mr. Madrigal was a percipient witness to extractions of inmates on the 3100-A row, including Plaintiffs Sanchez and Trinidad, and was himself extracted by the same defendant deputies who extracted Plaintiff Trinidad. Mr. Madrigal's testimony was not limited at trial. | 0% |

---

[2] If Mr. Rodriguez were merely a witness (and not a Plaintiff), his 1983 percentage would be 0%, because he was a percipient witness to extractions of inmates on the 3300-B row, including Plaintiff Nunez, and was extracted by the same defendant deputies who extracted Plaintiffs Nunez and Sanchez. Nevertheless, because his participation in this litigation was primarily in support of his own § 1983 claims, his division has been set at 100%.

8
Declaration of Caitlin S. Weisberg

| Witness | Explanation | Percent 1983 |
|---|---|---|
| Inmates Steve Burns, Noah Ayala, Fernando Delgado | These inmates were percipient witnesses to the overall extraction operation, including the standardized use of force and the level of force used during the extractions; however, they were not extracted by the same deputies who were involved in the Plaintiff extractions. Because the Court issued a limiting instruction for Mr. Ayala at trial, Plaintiffs have treated all of these witnesses as § 1983 only. | 100% |
| All individual defendants, including deputies and supervisors | All of the individual defendants and supervisors were named as defendants for Plaintiffs' state and federal claims. None of these defendants were unique to Rodriguez or the § 1983 claim against Defendant County. As explained in the Declaration of Ronald Kaye, and confirmed by my review of the records, there was no distinguishable time spent on the minority of defendants who prevailed at trial (i.e., time that would not have been spent had those defendants not been parties to Plaintiffs' claims). | 0% |
| Pat Davoren | Pat Davoren was the Operations Lieutenant at Men's Central Jail at the time of the incident. His deposition primarily reflected the incident, including statements reportedly made by Lieutenant Davoren to Chaplain Bartlett the day after the incident reflecting the conduct of Captain Cruz. Lieutenant Davoren was also questioned about the findings of the CCJV findings, particularly reflecting Captain Cruz. | 25% |
| Sergeant John Stanley | Sergeant Stanley was designated by the Defendants as the "person most knowledgeable" under FRCP 30(b)(6) on the issues of training and use of force by the LASD. During his deposition, Sergeant Stanley provided valuable information for future cross-examination of Defendant deputies reflecting force, less lethal weapons, videotaping procedures, etc. | 0% |

| Witness | Explanation | Percent 1983 |
|---|---|---|
| Commander Robert Olmsted, Captain Michael Bornman (LASD) | Commander Olmsted testified at trial about the increase in significant use of force incidents during the tenure of Captain Cruz and his efforts to have the management / chain of command of the LASD intervene to change the increasing trend of significant force. His testimony was used for *Monell* liability, and the Court gave a limiting instruction reflecting that Commander Olmsted's testimony was to be considered for only against the County of Los Angeles.<br>Captain Michael Bornman testified at trial about the conduct of Captain Cruz during his tenure at Men's Central Jail, including the time of the incident. The Court gave a limiting instruction to Captain Bornman's testimony that it was to be considered exclusively for *Monell* liability.[3] | 100% |
| Sister Patty Bartlett (MCJ Chaplain) | Chaplain Bartlett testified at trial about the medical condition of the inmates after the incident, and what occurred during the incident itself. | 0% |
| Mary Tiedeman (MCJ Monitor) | Ms. Tiedeman was a witness to the medical condition of the inmates after the incident, and her interview of Captain Cruz after the incident which resulted in multiple incriminating statements. Ms. Tiedeman also was prepared to testify about her interviews of inmates at Men's Central Jail as the jail monitor, and the universal fear of retaliation expressed by these inmates who reported acts of excessive force. | 50% |

---

[3] Commander Olmsted also testified on a more limited level to what occurred after the August 5, 2008 incident, including incriminating statements made by Captain Cruz to Lieutenant Davoren reflecting rejecting the assistance of the clergy to negotiate with the inmates. Out of an abundance of caution, based on the Court's limiting instruction, Plaintiffs designate Commander Olmsted's testimony as exclusively 1983.

10
Declaration of Caitlin S. Weisberg

| Witness | Explanation | Percent 1983 |
|---|---|---|
| Miriam Krinsky (CCJV Executive Director) | Miriam Krinsky testified at trial about the procedures and goals of the CCJV. | 100% |
| Martin Chenevert (Plf. Medical Expert), Kent Shoji (Def. Medical Expert) | Dr. Chenevert and Dr. Shoji testified in deposition and at trial about the injuries suffered by the Plaintiffs. Because of Plaintiff Rodriguez's claims, one fifth of this time is designated as § 1983-only. | 20% |
| Steve Martin (Plf. Police Practices Expert) | Steve Martin testified about the incident and the conduct of the Defendant deputies and the Plaintiffs during the incident. Mr. Martin spent a significantly smaller portion of his testimony and Rule 26 reports discussing *Monell* issues – specifically discussing several of the findings of the CCJV Report. | 10% |
| Johnny Gil Jurado (Def. Police Practices Expert) | Johnny Gil Jurado testified exclusively about the conduct of the defendant deputies during the incident and how it was consistent with LASD training. He did not opine about the pattern and practice issues reflected in the CCJV or Plaintiffs' *Monell* theories. | 0% |
| Javier Stauring (Plf. Gang Expert) | Javier Stauring was a rebuttal expert on the issue of Southsider gang culture at Men's Central Jail. His testimony was exclusively related to Defendants' characterization of the inmates' conduct during the incident. | 0% |

12. During the course of my review, I made an effort to identify entries that should not be included in Plaintiffs' fee motion, as an exercise of billing judgment and quality control. Approximately 146 hours were removed during my review of the billing entries. These hours fell into one or more of the following categories: (a) Hours that appeared to contain errors or appeared to be non-compensable; (b) Hours for which descriptions were too vague to identify; (c) Hours spent by trial team attorneys that were duplicative or unnecessary; (d)

11
Declaration of Caitlin S. Weisberg

Hours spent by KMBL attorneys and paralegals who were not part of the main litigation team.

13. Based on my review of the billing records and my knowledge of the case, I believe that the hours reflected in category (c) of Paragraph 12 above are under-inclusive because attorneys on the trial team exercised billing judgment on the front-end by not entering time that was duplicative, unnecessary, or *de minimis*. For example, in many instances, an attorney did not bill for reviewing and sending emails that were not integral to projects worked on by that attorney, although trial team attorneys were often copied on emails to keep them abreast of case activities. As another example, I would occasionally review pleadings for which I had no personal responsibility. In such instances, I would not bill my time to the case.

14. For similar reasons, I believe that category (d) of Paragraph 12 is under-inclusive because attorneys who were not working on the case did not typically bill time that was spent discussing issues on the case or working on the case.

15. As stated in the Declarations of Ronald Kaye and Jim Muller, Exhibit A does not include numerous hours of paralegal time, because certain paralegals who worked on the case during the years 2009-2012 did not maintain contemporaneous billing records and/or the records are incomplete.

16. As stated in Paragraph 46 of Mr. Litt's declaration, Exhibit B (setting forth the hours worked on this fee motion) excludes over 50 hours of Mr. Litt's time that was spent in connection with his Declaration on this motion. This exclusion was done by Mr. Litt because he used this motion as an opportunity to extensively update his database of attorney fee information.

17.     Finally, as stated in Paragraphs 30 and 46 of Mr. Litt's declaration, an additional 3% reduction in all hours is being applied to plaintiffs' request for fees.

18.     Exhibits A & B contain over 3700 individual billing entries. The task of reviewing and categorizing these entries was time-consuming and laborious. I made a good faith effort to painstakingly apply the rules set forth in this declaration to the best of my ability. Oftentimes, this involved more art than science. To the extent there are errors in the application of the guidelines set forth in this declaration, they are inadvertent.

19.     Attached hereto as Exhibit C is a chart itemizing the costs expended by KMBL during the course of this litigation that are being requested in the instant motion for attorney's fees and costs. Attached hereto as Exhibit D is a chart itemizing the costs expended by the Law Offices of James Muller during the course of this litigation that are being requested in the instant motion. These costs are summarized in the following table:

| Costs | | | |
|---|---|---|---|
| **Cost Type** | **KMBL** | **Muller** | **Total** |
| Copying | $13,529.00 | $2,963.06 | $16,492.06 |
| Printing | $137.02 | -0- | $137.02 |
| Research | $7,236.72 | -0- | $7,236.72 |
| Messenger Service | $5,028.97 | $676.34 | $5,705.31 |
| Postage | $107.59 | $127.62 | $235.21 |
| Local Travel | $1,196.40 | $429.44 | $1,625.84 |
| Distance Travel | $6,327.25 | $55.08 | $6,382.33 |
| Parking | $730.50 | $1,143.10 | $1,873.60 |
| Court Fees | -0- | $705.00 | $705.00 |
| Witness Fees | $951.90 | -0- | $951.90 |
| Deposition Fees | $12,254.19 | $7,455.09 | $19,709.28 |
| Trial Transcripts | $521.82 | $38.70 | $560.52 |

| | | | |
|---|---:|---:|---:|
| Video | $6,523.24 | $2,730.89 | $9,254.13 |
| Defense Expert Witness Fees | $3,060.00 | -0- | $3,060.00 |
| Consultants | $11,124.31 | $3,025.00 | $14,149.31 |
| Investigators | $1,170.00 | -0- | $1,170.00 |
| **SUBTOTAL:** | $69,898.91 | $19,349.32 | $89,248.23 |
| **Bill of Costs:** | | | -$35,313.46 |
| **TOTAL:** | | | $53,934.77 |

20.   The costs attached hereto do not include over $35,000 in expert witness fees that were paid to Plaintiffs' experts.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 17, 2014 in Pasadena, California.


                            */s/ Caitlin S. Weisberg*
                            Caitlin S. Weisberg