Ronald O. Kaye, SBN 145051
Email: rok@kmbllp.com
Barrett S. Litt, SBN 45527
David S. Mclane, SBN 124952
Kevin LaHue, SBN 237556
KAYE, MCLANE, BEDNARSKI & LITT, LLP
234 East Colorado Boulevard, Suite 230
Los Angeles, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

JAMES S. MULLER, SBN 126071
E-mail: jamesmullerlaw@att.net
LAW OFFICES OF JAMES S. MULLER
225 East Broadway, Suite 107F
Glendale, California 91205
Telephone: (818) 536-7922
Fax: (818) 536-7499

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERIBERTO RODRIGUEZ et al., | Case No. CV 10-6342 CBM(AJWx) |
| Plaintiffs, | [HON. CONSUELO B. MARSHALL] |
| vs. | PLAINTIFFS' CORRECTED NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS; DECLARATIONS; EXHIBITS; [PROPOSED] ORDER. |
| COUNTY OF LOS ANGELES et al., | |
| Defendants. | [*Filed concurrently with Notice of Errata*] |
| | Date:        June 16, 2014<br>Time:        10:00 a.m.<br>Courtroom:   2 |

TO THE COURT, DEFENDANTS, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Monday, June 16, 2014 at 10:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs, by and through counsel of record, will and hereby will and hereby do move for an order establishing the amount of attorneys' fees and costs under 42 U.S.C. §1988 (the Civil Rights Act), as limited by the Prison Litigation Reform Act ("PLRA"), and under California Civil Code §52.1(h) (Bane Act).

Pursuant to Local Rule 7-3, counsel for Plaintiffs conferred with counsel for Defendants on November 21, 2013. Defendants do not consent to the relief requested in this motion.

Plaintiffs' motion is based on the attached Memorandum of Points and Authorities, the accompanying Declarations and Exhibits thereto, and all pleadings, records and papers on file in this action, and such other evidence and argument as may be presented on behalf of Plaintiffs at the hearing on this motion.


DATED: March 28, 2014          Respectfully submitted,

                               **KAYE, McLANE, BEDNARSKI & LITT, LLP**
                               **LAW OFFICES OF JAMES S. MULLER**


                               _____*/s/ Barrett S. Litt*_____ _____
                               By: Barrett S. Litt

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

**I.   INTRODUCTION**………................................................................... 1

**II.  STATEMENT OF FACTS**… ............................................................ 1

    A.  Plaintiffs Prevailed in Proving that Their Eighth and Fourteenth Amendment Rights Were Violated Under State and Federal Law, Resulting in a Significant Damages Award by the Jury. ............................ 1

    B.  Plaintiffs Could Not Have Prevailed, or Achieved the Same Degree of Success, Without Full Investment in the Case............................................. 3

    C.  Defendants Aggressively Litigated This Case and Were Indifferent to Settlement, Forcing Plaintiffs To Ramp Up for Trial ................................. 3

**III. PLAINTIFFS MEET THE GENERAL STANDARDS FOR AN AWARD OF ATTORNEYS' FEES UNDER BOTH FEDERAL AND STATE LAW**………………… ..........................................................5

**IV. MOST OF THE FEES PLAINTIFFS SEEK ARE COMPENSABLE UNDER CALIFORNIA LAW, BUT SOME ARE COMPENSABLE ONLY UNDER THE PLRA.** ........................................................... 6

    A.  Congress Capped Fees Under the PLRA ..................................... 6

    B.  Fees For Work That Relates to the §52.1 Claims Are Compensable Under That Statute Even If the Work Also Related to the §1983 Claims… 8

**V.  PLAINTIFFS ARE ENTITLED TO FEES PRIMARILY UNDER CALIFORNIA LAW AND, FOR CERTAIN MATTERS, UNDER THE PLRA**………………… .......................................................... 9

    A.  Plaintiffs Seek Fees Under Cal. Civil Code §52.1(h) So Long As The Work Related To Those Claims Even If It Also Related To Plaintiffs' §1983 Claims........................................................................... 9

    B.  A SUMMARY OF PLAINTIFFS' FEE REQUEST ................................. 10

**VI. PLAINTIFF'S LODESTAR IS REASONABLE** ....................................... 14

    A. Counsel's Hourly Rates Are Reasonable ..................................... 14

    B. Counsel's Hours Are Reasonable.............................................. 17

**VII. A 2.0 LODESTAR ENHANCEMENT IS APPROPRIATE** ..................... 22

i

A. The Great Risk Taken By Plaintiffs' Law Firms Warrants the Lodestar Enhancement Sought....................................................... 22

B. Numerous Cases Have Enhanced Fees By 1.5 To 2.0, and 2.0 Is Reasonable Here........................................................................... 26

**VIII. PLAINTIFFS' COSTS ARE REASONABLE** ........................................ 27

**IX.   CONCLUSION**…………........................................................................ 29

ii

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3
4
5

*Ambriz v. Arrow Fin. Servs., LLC*
   No. CV07-5423-JFW(SSX), 2008 WL 2095617 (C.D. Cal. May 15, 2008) ........................................................................................ 28

6
7

*Armstrong v. Davis*
   318 F.3d 965 (9th Cir.2003) ...................................................... 6, 8, 9

8
9

*Battle v. Anderson*
   564 F.2d 388 (10th Cir. 1977) ........................................................ 19

10
11

*BD v. DeBuono*
   177 F. Supp. 2d 201 (S.D.N.Y. 2001) ............................................ 28

12

*Beaty v. BET Holdings, Inc.*
   222 F.3d 607 (9th Cir. 2000) .......................................................... 17

13
14

*Blum v. Stenson*
   465 U.S. 886 (1984) .......................................................................... 5

15
16

*Boesing v. Spiess*
   540 F.3d 886 (8th Cir. 2008) ............................................................ 7

17
18

*Bouman v. Block*
   940 F.2d 1211 (9th Cir.1991) ............................................................ 8

19
20

*Burlington v. Dague*
   505 U.S. 557 (1992) .......................................................................... 5

21
22

*Cairns v Franklin Mint Co.*
   292F.3d 1139 (9th Cir. 2002) ........................................................ 20

23
24

*City of Riverside v. Rivera*
   477 U.S. 561 (1986) .................................................................. 15, 22

25
26

*Cleveland v. Curry*
   No. 07-CV-02809-NJV, 2014 WL 789098 (N.D. Cal. Feb. 26, 2014)................ 7

27

*Crommie v. PUC*
   840 F. Supp. 719 (N.D. Cal. 1994).................................................. 26

28

*Democratic Party of State of Washington v. Reed*
  388 F.3d 1281 (9th Cir. 2004) .................................................................. 20

*Eastern Trading Co. ex rel. Amin v. Refco, Inc.*
  No. 97-6815, 2001 WL 869626 (N.D. Ill. Aug. 01, 2001) ............................ 28

*El-Hakem v BJY, Inc.*
  415 F.3d 1068 (9th Cir 2005) .................................................................. 22

*Farella v. Hockaday*
  304 F. Supp. 2d 1076 (C.D. Ill. 2004) ........................................................ 7

*Harris v. Marhoefer*
  24 F.3d 16 (9th Cir.1994) ...................................................................... 27

*Hensley v. Eckerhart*
  461 U.S. 424 (1983) .......................................................................... 5, 9

*Hutchinson v. McCabee*
  No. 95-5449 (JFK), 2001 WL 930842 (S.D.N.Y. Aug. 15, 2001) ................... 28

*In re Immune Responses Sec. Litig.*
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................... 27

*Leuzinger v. Cnty. of Lake*
  No. C 06-00398-SBA, 2009 WL 839056 (N.D. Cal. Mar. 30, 2009) ............... 27

*Mangold v. California Pub. Utilities Comm'n*
  67 F.3d 1470 (9th Cir. 1995) ................................................................... 8

*Moore v. James H. Matthews & Co.*
  682 F.2d 830 (9th Cir. 1982) .................................................................. 17

*Morales Feliciano v. Hernandez Colon*
  697 F.Supp. 51 (D.P.R. 1988) ................................................................ 19

*Moreno v. City of Sacramento*
  534 F.3d 1106 (9th Cir. 2008) ........................................................... 18, 20

*Morrison v. Davis*
  88 F. Supp. 2d 799 (S.D. Ohio 2000) ........................................................ 11

*Perez v. Cate*
  632 F.3d 553 (9th Cir. 2011) .................................................................. 7

*Sheehan v. Donlen Corp.*
  173F.3d 1039 (7th Cir. 1999) ............................................................ 21

*Siripongs v. Davis*
  282 F.3d 755 (9th Cir. 2002) ............................................................. 6

*Velasquez v. Khan*
  No. S 01-0246MCEDAD, 2005 WL 2397058 (E.D. Cal. Sept. 28, 2005) ........ 27

*Webb v. Ada County*
  285 F.3d 829 (9th Cir. 2002) .......................................................... 6, 7

**OTHER CASES**

*Amaral v. Cintas Corp. No. 2*
  163 Cal.App.4th 1157 (Cal. Ct. App. 2008) ......................................... 23

*Bell v. Farmers Ins. Exch.*
  No. A101246, 2004 WL 1281818 (Cal. Ct. App. June 9, 2004) ..................... 27

*Bussey v. Affleck*
  225 Cal. App. 3d 1162 (Cal. Ct. App. 1990) ........................................ 28

*Robert L. Cloud & Associates, Inc. v. Mikesell*
  69 Cal. App. 4th 1141 (1999) .......................................................... 28

*Cazares v. Saenz*
  208 Cal. App. 3d 279 (Cal. Ct. App. 1989) ........................................ 25

*Chavez v. City of Los Angeles*
  47 Cal. 4th 970 (2010) ................................................................. 5

*Chavez v. Netflix, Inc.*
  162 Cal. App. 4th 43 (Cal. Ct. App. 2008) ......................................... 26

*Children's Hosp. & Med. Ctr. v. Bonta*
  97 Cal. App. 4th 740 (Cal. Ct. App. 2002) ......................................... 14

*Colgan v. Leatherman Tool Grp., Inc.*
  No. B196650, 2007 WL 4532916 (Cal. Ct. App. Dec. 27, 2007) ................... 27

*Feminist Women's Health Ctr. v. Blythe*
  32 Cal. App. 4th 1641 (Cal. Ct. App. 1995) ........................................ 22

v

*Graham v. Daimler Chrysler Corp.*
   34 Cal. 4th 553 (2004)...................................................................... 10, 23, 25

*Harman v. City & Cnty. of San Francisco*
   158 Cal. App. 4th 407 (2007) ...................................................................... 16

*Heritage v. Town of Woodside*
   No. A120749, 2008 WL 4868816 (Cal. Ct. App. Nov. 12, 2008) ................... 26

*Horsford v. Bd. Of Trustees of Cal. State Univ.*
   132 Cal. App. 4th 359 (2005) ........................................................... 18, 24, 26

*Hsu v. Semiconductor Sys., Inc.*
   126 Cal. App. 4th 1330 (2005) .................................................................... 28

*In re Vitamins Cases*
   110 Cal. App. 4th 1041 (Cal. Ct. App. 2003) ................................................ 25

*Ketchum v. Moses*
   24 Cal.4th 1122 (2001)...........................................................................passim

*Maldonado v. Club Fresh*
   No. C055954, 2009 WL 3246450 (Cal. Ct. App. Oct. 9, 2009) ....................... 27

*Peak-Las Positas Partners v. Bollag*
   171 Cal. App. 4th 101 (2009) ...................................................................... 17

*Pellegrino v. Robert Half Int'l, Inc.*
   182 Cal. App. 4th 278 (Cal. Ct. App. 2010) .................................................. 27

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*
   163 Cal. App. 4th 550 (Cal. Ct. App. 2008) .................................................. 18

*Ramon v. County of Santa Clara*
   173 Cal. App. 4th 915 (Cal. Ct. App. 2009) .................................................. 17

*Serrano v. Unruh*
   32 Cal. 3d 621................................................................................................ 21

*State v. Meyer*
   174 Cal. App. 3d 1061 (Cal. Ct. App. 1985)................................................ 26

*W. Century 102, Ltd. v. City Of Inglewood*
   No. B164350, 2004 WL 886384 (Cal. Ct. App. Apr. 27, 2004)...................... 27

*Wershba v. Apple Computer, Inc.*
   91 Cal. App. 4th 224 (Cal. Ct. App. 2001) .......................................................27

**FEDERAL STATUTES**

18 U.S.C. §1997e(d)(3) ...................................................................................7

42 U.S.C. §1983..............................................................................passim

42 U.S.C. §1988..............................................................................passim

42 U.S.C. §1997e...........................................................................1, 6

42 U.S.C. §1997e(d)(1) ..............................................................................6

ADA....................................................................................................9

ADEA ...................................................................................................8

Criminal Justice Act, 18 U.S.C. §3006A.................................................7

**OTHER STATUTES**

California Civil Code §52.1..................................................................passim

California Civil Code §52.1(h)..............................................................passim

**CONSTITUTIONAL PROVISIONS**

Fourteenth Amendment ....................................................................................1

**OTHER AUTHORITIES**

2 Pearl, *California Attorney Fee Awards*, §9.64 (3d ed. 2010, Feb. 2012 Supp.)..................................................................................................22

Judicial Conference. Guide to Judiciary Policy, vol. 7, Chapter 2, §230.16, *available at* http://www.uscourts.gov/uscourts/FederalCourts/ AppointmentOfCounsel/vol7/ ................................................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In this motion, Plaintiffs, who prevailed at trial on their state and federal civil rights claims, seek an award of fees and costs pursuant to California Civil Code § 52.1(h) and 42 U.S.C. §1988, the relevant attorney's fee statutes. The statutory attorney's fees claimed under § 1988 are limited by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e; however, these limitations do not apply to the fees claimed under state law for work relevant to Plaintiffs' § 52.1 claims. Plaintiffs also request that the Court apply a 2.0 multiplier to the § 52.1 fees, which is authorized by state law.

As explained in this motion, and in the Declaration of Barrett S. Litt filed herewith, the requested amount of fees and costs has been well earned by Plaintiffs' counsel. The excellent results obtained in this litigation, counsel's skill and experience, the difficulties and complexities of this case, the enormous risk taken on by Plaintiffs' counsel, and the aggressive litigation tactics employed by Defendants, all justify a full award.

## II.   STATEMENT OF FACTS

### A.   PLAINTIFFS PREVAILED IN PROVING THAT THEIR EIGHTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED UNDER STATE AND FEDERAL LAW, RESULTING IN A SIGNIFICANT DAMAGES AWARD BY THE JURY.

After more than four years of litigation and a five week trial, the jury found in favor of each of the five Plaintiffs—Heriberto Rodriguez, Eric Nunez, Juan Carlos Sanchez, Juan Trinidad, and Carlos Flores—on their claims that their Eighth and Fourteenth Amendment rights were violated by the use of excessive force. For each of the Plaintiffs, the jury found that they were subjected to force that was malicious and sadistic. The jury determined that this gave rise to liability under both 42 U.S.C. §1983 (Civil Rights Act) and California Civil Code §52.1

1

(Bane Act).[1] Nineteen of the twenty-eight individual defendants in the case were found liable for these violations.

The jury awarded significant compensatory and punitive damages, totaling $950,000, which demonstrate both the seriousness of Plaintiffs' injuries and the extreme cruelty of Defendants' conduct.

- Mr. Flores was awarded $200,000 in compensatory damages against seven individual defendants and the County of Los Angeles and $57,000 in punitive damages against the three supervisor defendants responsible for his extraction.

- Mr. Sanchez was awarded $200,000 in compensatory damages against eight individual defendants and the County of Los Angeles and $37,000 in punitive damages against the three supervisor defendants responsible for his extraction.

- Mr. Trinidad was awarded $150,000 in compensatory damages against seven individual defendants and the County of Los Angeles and $42,000 in punitive damages against the three supervisor defendants responsible for his extraction.

- Mr. Nunez was awarded $100,000 in compensatory damages against eight individual defendants and the County of Los Angeles and $37,000 in punitive damages against the three supervisors responsible for his extraction.

- Mr. Rodriguez was awarded $90,000 in compensatory damages against seven individual defendants and the County of Los Angeles and $37,000 in punitive damages against the three supervisors responsible for his extraction.

---

[1] Four of the Plaintiffs asserted liability under both statutes and prevailed on both the § 1983 and § 52.1 claims. Mr. Rodriguez asserted liability under § 1983 only and prevailed on that claim.

2

Considering the jurors' stated aversion during voir dire to awarding high damages to prisoner Plaintiffs as well as Defendants' consistent undervaluing of the case—the final settlement offer during trial was less than a third of the damages awarded by the jury, before taking into attorney's fees and costs—Plaintiffs achieved a resounding victory.

### B. PLAINTIFFS COULD NOT HAVE PREVAILED, OR ACHIEVED THE SAME DEGREE OF SUCCESS, WITHOUT FULL INVESTMENT IN THE CASE.

Proving the brutality of the extractions on August 25, 2008 at Men's Central Jail required a heavy investment of time and skill. Prevailing in this case depended on persuading the jury that they should believe "the worst of the worst" prisoners in Men's Central Jail over the testimony of jail officials sworn to protect the citizenry against criminals. The extraction incident was tactically complicated, involving numerous inmates and deputies, and the best evidence—videos of the extraction—were murky, loud, and confusing. Plaintiffs also faced onerous legal standards, requiring proof of punitive and malicious conduct by the individual defendants, which were much higher than the typical excessive force case where the issue is the reasonableness of the force used.

For these reasons, the risk of losing at trial was very high. To win, Plaintiffs had to gather every scrap of favorable evidence, defeat every negative inference, thoroughly prepare every witness examination, and prevail on every argument.

### C. DEFENDANTS AGGRESSIVELY LITIGATED THIS CASE AND WERE INDIFFERENT TO SETTLEMENT, FORCING PLAINTIFFS TO RAMP UP FOR TRIAL.

Defendants filed four dispositive pleadings—one motion to dismiss, one motion for judgment on the pleadings, and two motions for summary judgment—repeatedly seeking to dismiss all claims against all defendants. The summary judgment motions were global, requiring Plaintiffs, in effect, to organize the whole case and present all their evidence, lest any omission of fact or proof cause a claim to fail.

3

Defendants were also relentless in their opposition to discovery, objecting to the vast majority of requests and refusing or delaying the production of important documents and videos. This resulted in three major motions to compel, two motions for sanctions, and other, more minor, discovery disputes. Hundreds of emails were exchanged between counsel to follow-up on missing discovery and discovery disputes. In the weeks leading up to trial, Defendants filed fourteen motions *in limine* and numerous objections to Plaintiffs' evidence, including the video depositions of the Plaintiffs, which were taken for the express purpose of presentation at trial.[2]

Throughout the litigation, Plaintiffs expressed a willingness to consider a reasonable settlement. Prior to November 2011, Plaintiffs' made a demand of $1,000,000 including damages and attorney's fees—an opening figure just $50,000 higher than the damages ultimately awarded by the jury—and asked defense counsel to respond if Defendants were interested in settlement negotiations. Plaintiffs' counsel considered this a low figure, but were cognizant of the grave risk associated with seeking damages on behalf of convicted felons that required convincing a jury that Defendants' testimony was false. Defendants made no movement at that time, and little movement at any time. Defendants' final offer, made during settlement negotiations and repeated before closing argument, was $300,000, a figure well below the now-proven value of the case and one which would have left Plaintiffs' counsel with a huge loss based on their necessary investment of time and money in the case.

The course of the litigation is described in detail in the Declarations of Ronald Kaye and James Muller.

---

[2] Practical difficulties also complicated discovery and the presentation of evidence to the jury. For example, by the time depositions were taken, four of the five Plaintiffs were no longer housed in the Los Angeles area, requiring extensive travel and logistical planning. These video depositions, and other inmate visiting issues, were the subject of numerous court filings.

**ARGUMENT**

**III.   PLAINTIFFS MEET THE GENERAL STANDARDS FOR AN AWARD OF ATTORNEY'S FEES UNDER BOTH FEDERAL AND STATE LAW.**

Under federal and state law, civil rights plaintiffs who have prevailed on some significant issue in their litigation are entitled to an award of fees. 42 U.S.C. §1988; Cal. Civ. Code. §52.1(h); *see, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) (citing *Hensley* and indicating that California law was "consistent" with it). Once the fee entitlement threshold has been crossed, the prevailing plaintiffs' fee award is based upon the lodestar method: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "Where a plaintiff  has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435.

The appropriate rate is the "market rate," which is demonstrated by the moving party submitting "satisfactory evidence in addition to the attorney's own affidavit that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Such a rate "is normally deemed to be reasonable, and is referred for convenience as the prevailing market rate." *Id.*

In the foregoing respects, federal and California law are parallel. Ordinarily, where a case has gone to trial and plaintiff has prevailed, the only significant distinction between the standards for an award of fees under federal or state law is the availability of a multiplier. *Compare Burlington v. Dague*, 505 U.S. 557, 567 (1992) (generally no fee enhancements), *with Ketchum v. Moses*, 24 Cal.4th 1122,

5

1    1133 (2001) (fee enhancements available where the contingent fee market would

2    support it).

3         In this case, there is another difference. Congress has adopted special

4    standards for prevailing prisoners seeking monetary damages authorized by 42

5    U.S.C. § 1988. PLRA, 42 U.S.C. § 1997e.  These special standards, which place

6    limitations on the award of attorney's fees as explained below, do not apply to fees

7    under California law.

8         Based on these differences, Plaintiffs seek fees under both federal and state

9    law using a methodology for dividing time that is explained in this motion.

10   **IV.   MOST OF THE FEES PLAINTIFFS SEEK ARE COMPENSABLE**

11            **UNDER CALIFORNIA LAW, BUT SOME ARE COMPENSABLE ONLY UNDER THE PLRA.**

12       **A.   CONGRESS CAPPED FEES UNDER THE PLRA**

13        Because Plaintiffs were incarcerated at the time this action was instituted,

14   their "recovery of fees [for violation of §1983] is [ ] restricted by the PLRA."

15   *Siripongs v. Davis*, 282 F.3d 755, 757 (9th Cir. 2002); *Armstrong v. Davis*, 318

16   F.3d 965, 974 (9th Cir.2003) ("[T]he PLRA limit on fees applies to attorney's fees

17   awarded under §1988."). Congress enacted the PLRA to "curtail frivolous

18   prisoners' suits and to minimize the costs—which are borne by taxpayers—

19   associated with those suits." *Webb v. Ada County*, 285 F.3d 829, 837 (9th Cir.

20   2002) (citation omitted).

21        Such fees are to be awarded only if "directly incurred" in proving an "actual

22   violation," and the amount of the fee must be "proportionally related to the court

23   ordered relief for the violation" or "directly and reasonably incurred in enforcing

24   the relief ordered." 42 U.S.C. §1997e(d)(1). Where there is a monetary award, a

25   portion not to exceed 25 percent is to be applied against the fees awarded against

26   the defendant, and, "[i]f the award of attorney's fees is not greater than 150 percent

27   of the judgment, the excess shall be paid by the defendant." *Id.* §1997e(d)(2). The

28    

1   percentage of the monetary judgment applied to the attorney's fees is a matter

2   within the court's discretion. *Boesing v. Spiess*, 540 F.3d 886, 891 (8th Cir. 2008)

3   (holding that district court did not abuse discretion in ordering a 1% contribution

4   from plaintiff's judgment under § 1997e(d)(2); *Farella v. Hockaday*, 304 F. Supp.

5   2d 1076, 1081 (C.D. Ill. 2004) ("The section's plain language sets forth 25% as the

6   maximum, not the mandatory amount."); *Cleveland v. Curry*, No. 07-CV-02809-

7   NJV, 2014 WL 789098, at *3 (N.D. Cal. Feb. 26, 2014) (following *Boesing* and

8   ordering a 1% contribution).

9        Further, the hourly rate for fees awarded to prevailing prisoner litigants

10   cannot exceed 150 percent of the hourly rate for court-appointed counsel set out in

11   Criminal Justice Act, 18 U.S.C. §3006A (CJA). 18 U.S.C. §1997e(d)(3).

12   Attorney's fees under this PLRA hourly rate limitation should be calculated using

13   the hourly rate authorized by the Judicial Conference for court-appointed counsel

14   under §3006A, and not based on the amount actually appropriated by Congress.

15   *Webb*, 285 F.3d at 839.

16        The current CJA hourly rate is $126 per hour, as set by the Judicial

17   Conference. Guide to Judiciary Policy, Vol. 7, Ch. 2, §230.16, *available at*

18   http://www.uscourts.gov/uscourts/FederalCourts/AppointmentOfCounsel/vol7/

19   Vol07A-Ch02.pdf. Accordingly, the current maximum rate under the PLRA is

20   $189. That is also the maximum for paralegals and other non-attorney billers.

21   *Perez v. Cate*, 632 F.3d 553, 558 (9th Cir. 2011) ("[T]he PLRA limits courts to an

22   hourly rate that is 150 percent of the rate established for court-appointed counsel

23   under the Criminal Justice Act and does not set a separate benchmark rate for

24   paralegal fees.").

25        Based on these principles, all time allocated for work performed exclusively

26   on Plaintiffs' §1983 claims, for which fees are limited by the PLRA, has been

27   charged at a rate of $189 per hour or less, and a calculation has been made, in light

28

of the damages award, of the amount of that figure to be paid by defendants pursuant to §1988 and §1997e. *See* Section V.B, *infra*.

**B.     FEES FOR WORK THAT RELATES TO THE §52.1 CLAIMS ARE COMPENSABLE UNDER THAT STATUTE EVEN IF THE WORK ALSO RELATED TO THE §1983 CLAIMS.**

Plaintiffs anticipate that defendants will contend that any work related to the §1983 claim must be compensated under that statute even if, had there been no §1983 claim, the same work would have been compensable under §52.1(h). However, the Ninth Circuit has concluded that it is proper to use state law where there are overlapping federal and state civil rights claims and state law provides a greater award than does federal law. *See Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995).

In *Mangold*, Plaintiff brought parallel state and federal age discrimination claims, under FEHA and ADEA respectively, and prevailed on both. The trial court awarded fees and applied to all the fees a multiplier of two under state law, although federal law did not allow a multiplier. Reviewing the district court's application of state law over federal law *de novo*, the Court concluded that, in pendent jurisdiction cases, it "applied state law in determining not only the right to fees, but also in the method of calculating the fees." Any other rule "would likely lead to forum-shopping" because, "[a]s this case illustrates, . . . a significant difference in fees would be available in state court but not in federal court—an 'inequitable administration of the law.'" *Id*. at 1479; *see also Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir.1991) (affirming use of state law to award expert fees not available under federal law where plaintiff prevailed on parallel state and federal discrimination claims; since California law provided "an independent state ground for awarding costs," the plaintiff "is entitled to attorneys' fees under FEPA" where s/he "proceeds under multiple theories and prevails on her FEPA claims").

In *Armstrong v. Davis*, 318 F.3d 965 (9th Cir. 2003), the prevailing prisoner plaintiff litigated due process claims under § 1983 and disability claims under the

8

ADA. The trial court applied market rates under the ADA fee shifting provision to all the claims, concluding that the due process claim comprised only a "small portion of the trial and trial preparation work." *Id.* at 975. The Ninth Circuit held that the PLRA did not limit attorney's fees awarded under the ADA's independent fee provisions and that the trial court did not abuse its discretion in applying the ADA rates to all claims because the "§1983 claim required no additional discovery or witnesses at trial" and the arguments "so overlapped with the ADA and RA claims as to make discrete time allocation and billing challenging." Thus, the district court "reasonably concluded that it was not appropriate to apply the PLRA limits." *Id.* at 973-75.

Armstrong relied on the explanation in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), that, where "fee claims and non-fee claims were so intertwined that the time spent on the claims could not reasonably be divided, fees could be awarded for the entire case," and that that reasoning applied where "plaintiff's claims . . . involve a common core of facts or [are] based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Where there are "excellent results, his [plaintiff's] attorney should recover a fully compensatory fee." *Armstrong*, 318 F.3d at 975 (quoting *Hensley*, 461 U.S. at 435).

## V.   PLAINTIFFS ARE ENTITLED TO FEES PRIMARILY UNDER CALIFORNIA LAW AND, FOR CERTAIN MATTERS, UNDER THE PLRA.

### A.   PLAINTIFFS SEEK FEES UNDER CAL. CIVIL CODE §52.1(h) SO LONG AS THE WORK RELATED TO THOSE CLAIMS EVEN IF IT ALSO RELATED TO PLAINTIFFS' §1983 CLAIMS.

The foregoing authorities have guided Plaintiffs' methodology in allocating time. Time that was relevant to and intertwined with the §52.1 claim was claimed under state law, even if it was also relevant to the §1983 claim. Time not relevant to and not intertwined with the §52.1 claim was claimed under §1983. In practice,

1  this means that all time except the following was claimed under §52.1: 1) time

2  exclusive to Plaintiff Rodriguez (because he did not have a §52.1 claim); 2) time

3  exclusively relevant to the *Monell* claim (because the County was not a defendant

4  on the §52.1 claim); 3) time exclusive to the qualified immunity issues (because

5  there is no qualified immunity under state law); and 4) time spent on issues relating

6  to the PLRA, which only applies to the federal claims.[3] The Declaration of Caitlin

7  S. Weisberg goes into greater detail on this issue, and provides a more detailed

8  breakdown of how these general principles were applied.

9  **B.    A SUMMARY OF PLAINTIFF'S FEE REQUEST**

10      Plaintiffs' attorneys and paralegals performed well over 5,500 hours of

11  billable work on the merits of this litigation through February 28, 2014,[4] which has

12  been divided into 1260.4 hours exclusive to the § 1983 claims and 4412.8 hours

13  that were relevant to or intertwined with the § 52.1 claims. Litt Decl. ¶ 30;

14  Weisberg Decl. ¶¶ 5-8 & Ex. A (billing records).

15      Counsel are also entitled to be fully compensated for their work on this

16  motion and their bill of costs. *Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553,

17  580-582 (2004). Counsel have expended more than 200 hours preparing this

18  motion and applying for costs, 176.4 allocated to § 52.1 and 49.6 allocated to

19  §1988. Litt Decl. ¶ 30; Weisberg Decl., Ex. B (billing records).

20      The figures above reflect counsel's careful exercise of billing judgment:

21  compensation for at least 125 hours of time spent on this matter—approximately

22  2% of the time actually spent—has *not* been requested. In addition, to account for

23  arguable duplication, Plaintiffs have applied a 3% across the board reduction, in

24  effect removing an additional 175 plus hours.

25  _____

26      [3]  Time spent on the fee motion is allocated proportionately to the allocation for the non-fee motion work on the case.

27      [4]  Counsel will submit supplemental billing records for hours spent after

28  February 28, 2014 with the reply for this motion and will request that fees be awarded for those hours as well.

1    Applying the 52.1(h) and PLRA rates, counsel's lodestar for work on the

2    merits, after the exercise of billing judgment, as described above, is $2,754,041.65.

3    Work on the fee motion and costs amounts to $97,157.24. Plaintiffs also request

4    that this Court apply a 2.0 lodestar enhancement for work on the merits that has

5    been attributed to § 52.1, based on the great risk Plaintiffs' two small law firms

6    took in litigating this case on an entirely contingent basis. This adds $2,523,381.28

7    to the total fees requested. Plaintiffs request that the same multiplier be applied to

8    the work on Plaintiffs' fees and costs that is allocated as § 52.1 time. This adds

9    $88,073.58 to the total fees requested.

10    The total PLRA fees, $239,744.04, are subject to the 150% cap and the

11    required contribution by Plaintiffs from the judgment. Plaintiffs were awarded

12    $950,000 in compensatory and punitive damages. This allows for a PLRA fee

13    award of up to $1,425,000, greatly in excess of the amount of PLRA fees requested

14    by Plaintiffs.[5] In light of the degree of Plaintiffs' success on the merits and the

15    jury's finding that Defendants violated Plaintiffs' rights maliciously and

16    sadistically, Plaintiffs request that a minimal contribution—1% of the damages (a

17    total of $ 9,500)—be ordered by the Court from the Plaintiffs' monetary judgment.

18    *See Morrison v. Davis*, 88 F. Supp. 2d 799, 811 (S.D. Ohio 2000) (ordering PLRA

19    contribution of $1, or ".0000666% of the judgment," from the plaintiff's damages

20    because the case involved "a significant violation of the Plaintiff's rights" and the

21    jury sent a "clear signal that the [d]efendants should be punished").

22    The tables below summarize the fees requested, including the name of each

23    biller, years of practice and graduation year if an attorney, the hourly rate, hours

24    claimed, and the total for that biller. If the person is not an attorney, the qualifying

25    position of the biller is listed. There is one table for §52.1 fees and one for PLRA

26    _____

27    [5]  Even if the punitive damages were removed, the PLRA fees requested by

28    Plaintiffs are well below 150 % of the $740,000 compensatory damages award,
which would be $1,110,000.

11

fees. Hours spent on the merits of the litigation have been segregated from hours spent on this motion and Plaintiffs' Bill of Costs and are presented in separate columns. The underlying billing records are attached to the Declaration of Caitlin Weisberg as Exhibit A (Merits Hours) and Exhibit B (Fee Motion and Costs Hours).

| § 52.1(h) Fees | | | | | |
|---|---|---|---|---|---|
| Atty/Biller | Yrs Practice (Grad Date) | Rate | Hours (Merits) | Hours (Fee/Cost) | Total |
| Barry Litt | 45 (1969) | $975 | 37.4 | 27.2 | $62,985.00 |
| Ronald Kaye | 26 (1988) | $775 | 1077.9 | 21.9 | $852,345.00 |
| David McLane | 28 (1986) | $775 | 429.2 | 3.3 | $335,187.50 |
| James Muller | 28 (1986) | $700 | 946.4 | 11.5 | $670,530.00 |
| Kevin LaHue | 10 (2004) | $600 | 448.2 | 1.2 | $269,640.00 |
| Caitlin Weisberg | 6 (2008) | $500 | 458.9 | 16.8 | $237,850.00 |
| Julia White | Sr. Paralegal | $295 | 155.7 | 92.0 | $73,071.50 |
| Veronica Aguilar | Paralegal | $175 | 77.5 | 0 | $13,562.50 |
| Heath White | High tech paralegal | $235 | 80.0 | 0 | $18,800.00 |
| Lisa Mikhailova | Paralegal / Legal Asst. | $175 | 218.5 | 2.5 | $38,675.00 |
| John Srebalus | Paralegal / Legal Asst. | $175 | 16.0 | 0 | $2,800.00 |
| Vi Hohuynh | Law Clerk | $250 | 467.1 | 0 | $116,775.00 |
| SUBTOTAL: | | | 4412.8 | 176.4 | $2,692,221.50 |
| SUBTOTAL AFTER 3% REDUCTION: | | | | | $2,611,454.86 |
| SUBTOTAL WITH 2.0 MULTIPLIER (merits only): | | | | | $5,046,762.56 |
| TOTAL (2.0 Multiplier): | | | | | $5,222,909.72 |

| § 1988 / PLRA Fees | | | | | |
|---|---|---|---|---|---|
| Atty/Biller | Yrs Practice (Grad Date) | Rate | Hours (Merits) | Hours (Fee/Cost) | Total |
| Barry Litt | 45 (1969) | $189 | 18.9 | 7.7 | $5,027.40 |

12

| § 1988 / PLRA Fees | | | | | |
|---|---|---|---|---|---|
| **Atty/Biller** | **Yrs Practice (Grad Date)** | **Rate** | **Hours (Merits)** | **Hours (Fee/Cost)** | **Total** |
| Ronald Kaye | 26 (1988) | $189 | 373.0 | 6.2 | $71,668.80 |
| David McLane | 28 (1986) | $189 | 177.0 | 0.9 | $33,623.10 |
| James Muller | 28 (1986) | $189 | 211.5 | 3.2 | $40,578.30 |
| Kevin LaHue | 10 (2004) | $189 | 134.2 | .3 | $25,420.50 |
| Caitlin Weisberg | 6 (2008) | $189 | 159.2 | 4.7 | $30,977.10 |
| Julia White | Sr. Paralegal | $189 | 47.4 | 25.9 | $13,853.70 |
| Veronica Aguilar | Paralegal | $175 | 5.7 | 0 | $997.50 |
| Heath White | High tech paralegal | $189 | 6.3 | 0 | $1,190.70 |
| Lisa Mikhailova | Paralegal / Legal Asst. | $175 | 24.1 | .7 | $4,340.00 |
| John Srebalus | Paralegal / Legal Asst. | $175 | .3 | 0 | $52.50 |
| Vi Hohuynh | Law Clerk | $189 | 102.8 | 0 | $19,429.20 |
| **SUBTOTAL:** | | | 1260.4 | 49.6 | $247,158.80 |
| **SUBTOTAL AFTER 3% REDUCTION:** | | | | | $239,744.04 |
| **Plaintiffs' PLRA Contribution** | | | | | - $9,500 |
| **TOTAL:** | | | | | $230,244.04 |

Plaintiffs are also requesting $53,934.77 in costs (in addition to the $35,313.46 in costs included in Plaintiffs' Bill of Costs), which are compensable under both state and federal law. *See* Section VIII, *infra*. The following table provides a summary of the costs claimed by Plaintiffs. The cost details are attached to the Declaration of Caitlin Weisberg as Exhibit C (KMBL Cost Detail) and Exhibit D (Muller Cost Detail).

| Costs | | | |
|---|---|---|---|
| **Cost Type** | **KMBL** | **Muller** | **Total** |
| Copying | $13,529.00 | $2,963.06 | $16,492.06 |
| Printing | $137.02 | -0- | $137.02 |
| Research | $7,236.72 | -0- | $7,236.72 |

13

| Costs | | | |
|---|---|---|---|
| **Cost Type** | **KMBL** | **Muller** | **Total** |
| Messenger Service | $5,028.97 | $676.34 | $5,705.31 |
| Postage | $107.59 | $127.62 | $235.21 |
| Local Travel | $1,196.40 | $429.44 | $1,625.84 |
| Distance Travel | $6,327.25 | $55.08 | $6,382.33 |
| Parking | $730.50 | $1,143.10 | $1,873.60 |
| Court Fees | -0- | $705.00 | $705.00 |
| Witness Fees | $951.90 | -0- | $951.90 |
| Deposition Fees | $12,254.19 | $7,455.09 | $19,709.28 |
| Trial Transcripts | $521.82 | $38.70 | $560.52 |
| Video | $6,523.24 | $2,730.89 | $9,254.13 |
| Defense Expert Witness Fees | $3,060.00 | -0- | $3,060.00 |
| Consultants | $11,124.31 | $3,025.00 | $14,149.31 |
| Investigators | $1,170.00 | -0- | $1,170.00 |
| **SUBTOTAL:** | $69,898.91 | $19,349.32 | $89,248.23 |
| | | **Bill of Costs:** | -$35,313.46 |
| | | **TOTAL:** | $53,934.77 |

## VI.   PLAINTIFF'S LODESTAR IS REASONABLE

### A.   COUNSEL'S HOURLY RATES ARE REASONABLE

Counsel's requested hourly rates for §52.1 are reasonable for attorneys of their skill, experience and reputation. Under California law, plaintiff's attorneys are entitled to their requested rates if those rates are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (Cal. Ct. App. 2002).

Plaintiffs have provided two types of declarations and evidentiary support for the requested rates. First, they have established the stellar reputations and experience of Plaintiffs' lead counsel, individualized as to each of them. *See* Declarations of Donald Re, Sam Paz, Bill Genego (for Ronald Kaye); Declarations of Carol Watson, Donald Cook, and Paul Hoffman (for James Muller); Declarations of Brian Vogel and Sean Kennedy (for Dave McLane). In addition, Barry Litt has

14

1  provided a declaration that addresses, among other things, his experience and

2  acknowledgment of his civil rights expertise by courts, and his personal knowledge

3  of the attorneys involved in this litigation. Carol Sobel has also filed a declaration

4  speaking to her knowledge of the attorneys seeking fees in this motion.

5        Second, the declarations from Carol Sobel and Barry Litt also address the

6  reasonableness of the rates requested. Both Ms. Sobel and Mr. Litt have been

7  identified by courts as experts on attorney fee rates in Southern California. Both

8  have provided ample citations from a variety of sources to support the rates

9  requested. These include reference to numerous other attorney fee awards in civil

10  rights and consumer class actions (either direct fee awards or lodestar cross-checks

11  in class actions). Each has identified several civil rights cases in which rates

12  comparable to those requested (or in which rates are comparable to those requested

13  after accounting for the general increase in rates in Los Angeles in intervening

14  years) have been awarded.

15        In addition, each has identified numerous commercial rate awards or

16  commercial fees charged to clients, for which rates are considerably higher than

17  those being requested have. Congress expressly recognized that fees in federal civil

18  rights cases should be comparable to those in complex federal civil litigation. *See*

19  *City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) ("Congress made clear

20  that it 'intended that the amount of fees awarded under [§1988] be governed by the

21  same standards which prevail in other types of equally complex Federal litigation.'"

22  (citing S. Rep. No. 94-1011, at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908,

23  5913)). Given that standard, it would be reasonable to request rates comparable to

24  those for complex commercial litigation, but, as the Sobel and Litt Declarations

25  demonstrate, the fees requested here are below those often paid for commercial

26  litigation. The reasonableness of this request is reinforced by the fact that the

27  substantial commercial fees described in the declarations are generally paid across

28

1    the board; they are not generally based, for example, on peer recognition, such as

2    Super Lawyers or some other form of acknowledgment of skill and reputation.

3           California law identifies skill and experience, novelty and difficulty of issues,

4    rejection of other employment and contingent risk as factors in adjusting a lodestar.

5    *See, e.g., Harman v. City & Cnty. of San Francisco*, 158 Cal. App. 4th 407, 416

6    (2007). Setting aside contingent risk, which is the basis for Plaintiffs' request for a

7    multiplier in Section VII, *infra*, these factors support a lodestar on the high end of

8    the market for the reasons explained below.

9           Plaintiffs' lawsuit was certainly more difficult and complex than a routine

10   case, yet Plaintiffs achieved an exceptional result. First, any case involving civil

11   rights claims against jail officials is, by definition, more difficult than the usual

12   matter. There are seldom independent eyewitnesses, and, if there are, they are

13   usually jail inmates, which is combined with a significant credibility differential

14   between the plaintiffs and the defendants. Evidence is uniquely under the control of

15   defendants, making it difficult often to even obtain the evidence, as demonstrated in

16   this case by the destruction of videos, and it is sometimes impossible to obtain.

17   Substantive qualified immunity and constitutional law present complex legal issues

18   that must be litigated with skill and nuance.

19          Additionally, as elaborated on in Section VI(B), *infra*, Plaintiffs' prisoner

20   status impacted the litigation both substantively and logistically. Plaintiffs, and

21   other inmate witnesses, were largely unavailable to assist in the prosecution of the

22   action. Further, as discussed above, the fact that the Plaintiffs were prisoners

23   portrayed as the "worst of the worst" increased the practical burden of persuasion at

24   trial. To achieve the success obtained here, overcoming the prejudices of the

25   average juror and the average juror's reluctance to award significant damages to a

26   prisoner, Plaintiffs had to amass, prepare, and effectively present overwhelming

27   evidence of liability and damages. There was very little, if any, room for error.

28

From the beginning, Defendants made this matter extraordinarily difficult by spurning settlement and aggressively litigating the case. The amount of time Plaintiffs' counsel spent on the case of necessity precluded other employment. And finally, the result achieved—a $950,000 judgment—is stellar by any measure.

### B.    COUNSEL'S HOURS ARE REASONABLE

The number of hours for which Plaintiff's counsel request compensation also is reasonable. Under California law, every hour reasonably spent on the case is compensable: "Absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) (emphasis in original); *see also Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000) (Attorneys who take FEHA cases "ordinarily . . . can anticipate receiving full compensation for every hour spent litigating a claim." (internal quotations omitted))

Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery . . . ." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (internal quotations omitted); *see also Ramon v. County of Santa Clara*, 173 Cal. App. 4th 915, 925 (Cal. Ct. App. 2009). In making that determination, courts must look at "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself . . . ." *Vo v. Las Virgenes Municipal Utility Dist.*, 79 Cal.App.4th 440, 447 (2000); *see also Peak-Las Positas Partners v. Bollag*, 171 Cal. App. 4th 101, 114 (2009) (fees reasonable because of complexity of issues, results obtained, and defendants' aggressive litigation).

As the courts have recognized, civil rights lawyers working without payment from their clients have little to gain from "churning" a case:

It must be kept in mind that lawyers are not likely to spend

17

unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning [...].

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Accordingly, they should be fully compensated for taking the steps that they reasonably believe are necessary to *win* the case: "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; ***after all, he won, and might not have, had he been more of a slacker.***" *Id.* (emphasis added).

In the instant case, counsel's sworn declarations and attached time records document the attorney, paralegal, and law clerk hours spent in the successful prosecution of this action. *See* Weisberg Decl., Exs. A, B.; *see also* Litt Decl. ¶¶ 30-31, 47-48; Kaye Decl. ¶¶ 5-9, 12, 17-18; Muller Decl. ¶¶ 18-23. These time records are *prima facie* evidence that counsels' hours were reasonable. *See Horsford v. Bd. Of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous.").

Plaintiff's attorneys also have exercised billing judgment in several ways. First, attorney hours that were duplicative, unnecessary, or de minimis were either not entered by attorneys during the initial timekeeping process or were removed during the review of the billing records done for this motion. Erroneous and overly vague billing entries were also removed during this review. Second, over fifty hours spent by Mr. Litt researching, updating and completely revising his database of rates that he decided to do for this motion were not included. Third, a 3% additional reduction has been applied to all hours spent on the merits.

The burden now shifts to Defendants to prove that any specific time is unreasonable and "to point to the specific items challenged, with a sufficient

argument and citations to the evidence." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins.
Guarantee Assn.*, 163 Cal. App. 4th 550, 564 (Cal. Ct. App. 2008). Defendants
cannot meet that burden. To the contrary, the hours for which Plaintiff's counsel
have requested compensation are manifestly reasonable:

- Plaintiffs' hours reflect over four years of work, starting before the filing of
  the complaint in 2010 and culminating in a five-week trial in 2013.

- Plaintiff's counsel had every reason to be diligent and thorough. Cases
  representing prisoners are extremely difficult given negative social attitudes
  toward such inmates. *See* Litt Decl. ¶ 54; Muller Decl. ¶ 18; Paz Decl. ¶ 16;
  *Battle v. Anderson*, 564 F.2d 388, 398 (10th Cir. 1977) (in prisoner civil
  rights class action, "plaintiffs' class are generally a feared and despised
  class"); *Morales Feliciano v. Hernandez Colon*, 697 F.Supp. 51, 60 (D.P.R.
  1988) ("The general population's attitude toward those who commit or are
  accused of committing crimes is understandably one bordering in despise.
  Many [] believe that since plaintiffs are criminals, they deserve the
  conditions under which they live in the prisons.").

- This general difficulty was magnified in this case, a conclusion
  demonstrated by the fact that the mantra of the defense witnesses was that
  the Plaintiffs "were the worst of the worst."

- Defendants' position was that the case had little value, as was reflected in
  their arguments to the jury and their settlement posture. Thus, Plaintiffs'
  attorneys correctly anticipated that the case would have to be tried and took
  the steps to do so successfully.

- Plaintiffs bore the burdens of proof and persuasion. Of necessity, prevailing
  in this case required convincing the jury that the defendants' recitation of
  events was not credible. Doing so required extensive effort at every stage –
  obtaining and scrupulously analyzing all the relevant documents and tapes,
  all of which were in Defendants' control; deposing a vast number of defense

19

witnesses and defending the depositions of plaintiffs; extensive motion work; trial preparation and trial.

- Trial preparation for a five-week jury trial was intense, and the trial itself required a very heavy time commitment from Plaintiffs' trial team over the two-month period in September and October 2013. *See* Kaye Decl. ¶¶ 5. During this entire period, Plaintiff's attorneys were efficient and effective. Responsibilities were divided according to expertise and availability. *Id.* ¶ 8. To the extent "the lawyers performed *unnecessarily* duplicative work," *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (emphasis supplied), Plaintiffs' billing judgment reductions ensure that any such duplication will not be compensated. *See supra* (explaning individual time deletions plus an across the board 3% reduction); *cf. Moreno*, 534 F.3d at 1112 (a "district court can impose a small reduction... without a more specific explanation"). Plaintiffs believe that reduction is more than sufficient to eliminate any "unnecessary" duplication of effort.

- Defendants also were represented at all times by multiple attorneys, and the amount of time Plaintiffs' attorneys spent is attributable in large part to the amount of time Defendants' attorneys spent resisting Plaintiffs' claims: "Litigation has something of the tennis game, something of war, to it; if one side hits the ball, or shoots heavy artillery, the other side necessarily spends time hitting the ball or shooting heavy artillery back." *Democratic Party of State of Washington v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) (plaintiffs' hours reasonable when they are "of same magnitude" as opponents' hours); *see also Cairns v Franklin Mint Co.*,292 F.3d 1139 (9th Cir. 2002) (declining to reduce lodestar where opponent had incurred even greater fees). While Plaintiffs do not know the hours spent by defense counsel, several points are clear: 1) substantial time was spent since defense counsel generally had three attorneys present during trial at any given time; 2)

20

Plaintiffs succeeded on nearly every pretrial motion and motion *in limine* (both getting their own granted and defeating Defendants'), prima facie evidence that their time was well spent; 3) Plaintiffs had the burden of proof, which logically means that they need to spend more time overall than Defendants.

- While Defendants had every right to vigorously defend their position, Plaintiff's counsel had the right and duty to take the time needed to win their case. *See Sheehan v. Donlen Corp.*,173 F.3d 1039, 1048 (7th Cir. 1999) ("Plaintiff's attorneys did a thoroughly professional and able job in a difficult sort of case. We do not fault the quality of [the defendant's] representation. A case like this can go either way. Nonetheless, a plaintiff risks the likelihood, given the low success rate of employment discrimination cases, of bearing [his] own attorney's fees and at least the possibility of being stuck with the… [defendant's] attorney's fees. It is, therefore, rational and so reasonable for a plaintiff to encourage his attorneys to be thorough.")

Plaintiff's counsel had to thoroughly prepare for trial, given Defendants' choice to relentlessly litigate the case. Their trial arguments showed that they believed they should receive a defense verdict, and that, in any case, any award of damages should be small. Thus, Plaintiffs' counsel had to litigate well enough to win. "[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Serrano v. Unruh*, 32 Cal. 3d 621. 633 (1982) (internal citation omitted) (*Serrano IV*).

Lastly, Plaintiffs' complete success also fully justifies their attorneys' fee request. The jury found for Plaintiffs on each of their claims against the County and most of the Defendants,[6] and awarded substantial damages, especially when

---

[6] Defendants may argue that some type of "apportionment" is required because a handful of Defendants were not found liable, but the law does not

viewed in the context of the fact that Plaintiffs were jail inmates accused of being the "worst of the worst," terminology obviously intended to stoke the fear of the jury. Such complete relief entitles Plaintiff's counsel to a fully compensatory fee: "Where a plaintiff has obtained excellent results, his attorney[s] should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Feminist Women's Health Ctr. v. Blythe*, 32 Cal. App. 4th 1641, 1674 n.8 (Cal. Ct. App. 1995).

## VII. A 2.0 LODESTAR ENHANCEMENT IS APPROPRIATE

### A. THE GREAT RISK TAKEN BY PLAINTIFFS' LAW FIRMS WARRANTS THE LODESTAR ENHANCEMENT SOUGHT.

The application of a 2.0 lodestar is justified in this case by the great risk counsel took that after thousands of hours and many thousands of dollars, they would end up with no compensation for their work. Such risk commands a significant multiplier. While, as noted above, federal law does not compensate for risk, California law does.

"The purpose of a fee enhancement, or so-called multiplier, for contingent

---

support such a proposition. No time was time spent solely on those claims, as the proof related to a large scale operation in which evidence as to particular Defendants was difficult to segregate and the liability of particular Defendants was interrelated. The jury's findings in favor of a minority of Defendants do not detract from the overwhelming victory obtained by Plaintiffs in proving the brutality that they suffered and thereby vindicating their rights. *See, e.g., City of Riverside v. Rivera*, 477 U.S. 561, 564 (1986) (affirming fully compensatory fee even though 17 of over 30 defendants were dismissed and quoting district court's explanation that "it was never actually clear what officer did what until we had gotten through with the whole trial"); *El-Hakem v BJY, Inc.*, 415 F.3d 1068, 1075 (9th Cir 2005) (upholding district court's discretion not to reduce fee for unsuccessful claims against one defendant); *see also* 2 Pearl, *California Attorney Fee Awards*, § 9.64, p. 503 (3d ed. 2010, Feb. 2012 Supp.) (citing other cases).

risk is to bring the financial incentives for attorneys enforcing important . . . [rights] into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis…[.]"  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001).[7] "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 579 (2004). "[An enhancement] is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or the delay in payment of attorney fees." *Ketchum*, 24 Cal.4th at 1138.

Risk enhancements reflect the attorney's risk of receiving no payment at all. *See Graham*, 34 Cal. 4th at 583-84. That financial risk invariably commands a "premium" in the legal marketplace: attorneys whose compensation is wholly dependent upon achieving success for their clients demand and get significantly higher fees than attorneys who are paid a market rate as the case goes along, win or lose. *Ketchum*, 24 Cal. 4th at 1138; *see also id.* at 1132 ("A contingent fee must be higher than the fee for the same legal services as they are performed.") Indeed, the risk of litigating the case and receiving no compensation if the case is lost is often the most significant lodestar enhancement factor. *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1217 (Cal. Ct. App. 2008).

Enhancements for contingent risk are not a "bonus" or "windfall;" they are "*earned compensation*." *Ketchum*, 24 Cal. 4th at 1138 (emphasis added). As such, they are an essential component of reasonable attorney's fees in civil rights cases

---

[7] Although *Ketchum* also discusses other factors in adjusting fees, such as novelty and difficulty of the issues, the skill display in presenting them, and the preclusion of other employment, plaintiffs view these as generally components of supporting the requested lodestar rates. The argument for a multiplier is based on the extraordinary risk of loss, and that is the focus of the California Supreme Court's conclusion of the propriety of fee multipliers.

like this one—vigorously-contested actions against government entities and agents on behalf of society's cast outs—especially where, as here, the parties' ability to recover for their damages, and counsel's ability to recover for years of uncompensated work is entirely contingent on winning the case at trial and obtaining a fee award. In *Horsford*, for example, plaintiffs obtained substantial verdicts, but the superior court denied a lodestar enhancement. The Court of Appeal reversed, holding that, in light of the purposes of the fee-shifting statute (there FEHA), the refusal to apply an enhancement was an abuse of discretion:

> It has long been recognized ... that the contingent and deferred nature of the fee award in a civil rights or other case with statutory attorney fees *requires* that the fee be adjusted in some manner to reflect the fact that the fair market value of legal services provided on that basis is greater than the equivalent noncontingent hourly rate.

*Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 394-95 (Cal. Ct. App. 2005).

Unless risk is compensated, the purpose of the statute will not be fulfilled: *"A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." Ketchum*, 24 Cal. 4th at 1132-33 (citations omitted). As *Horsford* recognizes, if lodestars are not enhanced in cases like this one, government defendants would be "effectively immunized" from answering for their unlawful practices, especially when they "choose[] to defend [their] conduct through lengthy and complex litigation." 132 Cal. App. 4th at 400-01.

In this case, the risk faced by counsel's small law firms has been staggering:

- The financial risk has been enormous. Compensation for more than 5500 hours of work—over $3.4 million worth of time using market rates—has been and is at stake. Counsel also have risked almost $90,000 in expenses paid out of their own pockets (over $125,000 including expert fees that

are not being sought). Again, all of this money would have been lost if the case had not been won. Many more hours and dollars promise to be put at risk on appeal. If this case had been lost in this Court, or if it is lost on appeal, all of counsel's time and money will be lost. This level of financial risk should be compensated by a fee that is significantly higher than the fees that are paid by a fee-paying client, win or lose. *See* Litt Decl., ¶¶ 50-53; Sobel Decl., ¶ 31.

- The formidable obstacles Plaintiff faced also justify an enhancement. *See Graham,* 34 Cal. 4th at 583 (the greater the risk of not prevailing, the greater the enhancement). The risk of loss was very great in this case, given the prisoner status of the Plaintiffs, as discussed above.

- Defendants employed competent and aggressive lawyers to vigorously resist Plaintiffs' action.

- Settlement was not an option. The final settlement offer of $300,000 (inclusive of fees and costs) was far below what Plaintiffs were awarded at trial; that remained defendants' offer even at the close of trial. *See* Kaye Decl., ¶¶ 5(e), 20; Muller Decl. ¶ 20.

- This case was litigated entirely by one small law firm and a sole practitioner. For both, committing the time and resources involved in this case substantially reduced their ability to take on other cases, dramatically increasing their risk. *See, e.g.*, Kaye Decl., ¶ 7.

- Taking the case to trial rather than settling greatly increased counsel's risk because it greatly increased the chance that they would end up with nothing. *See In re Vitamins Cases*, 110 Cal. App. 4th 1041, 1056 (Cal. Ct. App. 2003). This also sets this case apart from the vast majority of cases, which settle and therefore ensure counsel some compensation. *See Cazares v. Saenz*, 208 Cal. App. 3d 279, 288 (Cal. Ct. App. 1989) ("[I]n

25

theory, a contingent fee in a case with a 50 percent chance of success

should be twice the amount of a non-contingent fee for the same case.").

Under *Ketchum* and *Horsford*, a statutory fee award that is no greater than

the fee that a fee-paying client would have paid, win or lose, is simply not a

reasonable fee. In the legal marketplace, law firms simply do not commit

thousands of hours of uncompensated time to such a highly risky case without the

expectation that, if they are successful, they will be compensated for their risk with

a fee that is significantly greater than if they had been paid hourly rates, win or

lose. Litt Decl., ¶¶ 50-53; Sobel Decl., ¶ 31.

### B.  NUMEROUS CASES HAVE ENHANCED FEES BY 1.5 TO 2.0, AND 2.0 IS REASONABLE HERE.

In addition to the other considerations discussed, the public interest served

by Plaintiffs' enforcement of Plaintiffs' civil rights reinforces the propriety of a

lodestar. *State v. Meyer*, 174 Cal. App. 3d 1061, 1073 (Cal. Ct. App. 1985) (The

"public service element ... and motivation to represent consumers and enforce

laws" may justify lodestar enhancement.). In light of the special difficulties of

representing convicted prisoners labeled "the worst of the worst," the hard fought

litigation, and the public interest served by obtaining a verdict that brought to real

life and justice the behavior outlined in the Citizen's Commission on Jail Violence,

a multiplier of 2.0 is appropriate here.

Many cases have awarded multipliers of 1.5 to 2.0 in civil rights and public

interest litigation. *See, e.g.*, *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (Cal.

Ct. App. 2008) (2.5 multiplier not "so out of line with prevailing case law as to

constitute an abuse of discretion"); *Crommie v. PUC*, 840 F. Supp. 719, 726 (N.D.

Cal. 1994) (2.0 multiplier in FEHA action based in part on "public interest value"

of plaintiffs' individual age discrimination actions), *aff'd sub nom Mangold v.

PUC*, 67 F.3d 1470 (9th Cir. 1995); *Uphold our Heritage v. Town of Woodside*,

No. A120749, 2008 WL 4868816 (Cal. Ct. App. Nov. 12, 2008) (multiplier of 2.0

under §1021.5 after successful mandamus action); *Leuzinger v. Cnty. of Lake*, No. C 06-00398-SBA, 2009 WL 839056 (N.D. Cal. Mar. 30, 2009) (multiplier of 2.0 in FEHA case); *Colgan v. Leatherman Tool Grp., Inc.*, No. B196650, 2007 WL 4532916 (Cal. Ct. App. Dec. 27, 2007) (multipliers of 2.0 and 1.5 for trial and appellate work in consumer class action awarding §1021.5 fees); *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) (multiplier of 2.0 in anti-SLAPP motion); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (Cal. Ct. App. 2001) ("[m]ultipliers can range from 2 to 4 or even higher"; multiplier in that case of 1.42); *Bell v. Farmers Ins. Exch.*, No. A101246, 2004 WL 1281818 (Cal. Ct. App. June 9, 2004) (1.833 multiplier on statutory attorney's fees in overtime class action); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278 (Cal. Ct. App. 2010) (multiplier of 1.75 in wage and hour case with 17 day trial); *W. Century 102, Ltd. v. City Of Inglewood*, No. B164350, 2004 WL 886384 (Cal. Ct. App. Apr. 27, 2004) (multiplier of 1.75 in inverse condemnation case); *Maldonado v. Club Fresh*, No. C055954, 2009 WL 3246450 (Cal. Ct. App. Oct. 9, 2009) ("enhancement to the lodestar amount to reflect the contingency risk is one of the most common fee enhancers;" 1.5 multiplier in disability discrimination case).

## VIII.  PLAINTIFFS' COSTS ARE REASONABLE

Plaintiffs have established their costs, which, except for copy/print/scanning, are generally out of pocket and are well within the normal range of costs awarded under both California and federal fee shifting statutes, which allow reimbursement of litigation expenses that "would normally be charged to a paying client." *Velasquez v. Khan*, No. S 01-0246MCEDAD, 2005 WL 2397058 (E.D. Cal. Sept. 28, 2005); *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir.1994). The types of costs requested here are normal costs awardable under fee shifting statutes, and are routinely allowed, including travel costs, investigators, consultants, filing fees, photocopies, printing, scans, messenger services, telephone, mailing, computerized legal research, and similar costs normally reimbursed by the client. *See, e.g., In re*

1   *Immune Responses Sec. Litig.*, 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007);

2   *Ambriz v. Arrow Fin. Servs., LLC*, No. CV07-5423-JFW(SSX), 2008 WL 2095617

3   (C.D. Cal. May 15, 2008). Opinions of the federal courts are applicable to

4   determining allowable costs under California law. *Bussey v. Affleck*, 225 Cal. App.

5   3d 1162, 1165 (Cal. Ct. App. 1990), *abrogated on other grounds by Robert L.*

6   *Cloud & Associates, Inc. v. Mikesell*, 69 Cal. App. 4th 1141 (1999) and *Hsu v.*

7   *Semiconductor Sys., Inc.*, 126 Cal. App. 4th 1330, (2005).

8        Plaintiffs are not seeking reimbursement for their own expert fees and

9   expenses, totaling more than $35,000. However, Plaintiffs' requested costs do

10  include consulting fees and expert witness fees charged by defense experts for their

11  depositions. These are compensable costs. *See Hutchinson v. McCabee*, No. 95-

12  5449 (JFK), 2001 WL 930842, at *6 (S.D.N.Y. Aug. 15, 2001); *BD v. DeBuono*,

13  177 F. Supp. 2d 201, 204 (S.D.N.Y. 2001) (awarding reimbursement of consulting

14  fees for a consultant who "assisted plaintiffs' attorneys with pretrial preparation

15  and jury selection, provided technological assistance, and worked on mock

16  trials."); *Eastern Trading Co. ex rel. Amin v. Refco, Inc.*, No. 97-6815, 2001 WL

17  869626, at *13-14 (N.D. Ill. Aug. 01, 2001) (awarding costs for jury consultant and

18  courtroom media presentation firm in claim for contract attorney's fees).

19       The declaration of Barrett S. Litt establishes that all the expenses incurred

20  here are normally billed to clients in civil rights cases, including to fee paying

21  clients where they exist. Litt Decl. ¶ 49.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

28

# IX.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully requests that this Court grant their motion for award of reasonable attorneys' fees, including costs, in full.


DATED: March 28, 2014        Respectfully submitted,

**KAYE, McLANE, BEDNARSKI & LITT, LLP**
**LAW OFFICES OF JAMES S. MULLER**


_____*/s/ Barrett S. Litt*_____  _____

By: Barrett S. Litt

29